STRINGHAM vs. THE BOARD OF SUPERVISORS OF WINNEBAGO COUNTY.

*Jurisdiction of appellate court.— County supervisors : what claims they can allow — R. S. ch.* 13, *secs.* 27, 40, 41.

1. Where an inferior court or tribunal had no jurisdiction of a cause, an appeal from its decision therein confers no jurisdiction upon the appellate court.

2. A claim to have taxes on land refunded on the ground that they were excessive through the wrongful and illegal conduct of the assessor, is not such a claim as the board of county supervisors is empowered to consider and allow under secs. 27, 40, 41, ch. 13, R. S.

3. The word "account" in said section 27 refers only to demands arising out of some express or implied contract, or of some fiduciary relation; and the words "claim" and "demand" in said sections 40, 41, refer to such accounts.

APPEAL from the Circuit Court for *Winnebago* County.

The defendant appealed from a judgment against it. The case is stated in the opinion.

*Earl P. Finch,* for appellant, cited R. S. ch. 13, §§ 27, 42, 43 ; 1 Wis. 414 ; 3 id. 337 ; 13 id. 494, 611.

*A. A. Austin,* for respondent.

DIXON, C. J. The plaintiff presented his petition to the board of supervisors of Winnebago county, pray-

ing to have the amount of certain taxes, and interest thereon, paid by him for county and state purposes, refunded to him, on the ground of illegality in the assessment. The taxes were upon several lots of land in the third ward of the city of Oshkosh, which had been sold by the county treasurer for the non-payment of the taxes. The petitioner claimed that the "assessment roll was not made according to law, and was illegal and void," for reasons stated in the petition as follows : "That said assessment was unjust and unequal, so far as the property of this petitioner is concerned, his property being assessed at a much higher value than other property, of equal or greater value, lying immediately adjacent thereto ; that none of the requirements of the statutes then in force, relative to the assessment and levy of taxes, were complied with by the assessors who assessed said property, and that all the proceedings of said assessors were illegal and void ; that at the sale of said premises, in the month of May, 1865, the said treasurer issued to the purchasers thereof, certificates of sale of said lots, which were fair on their face, and, to prevent tax deeds from being issued on said certificates, the petitioner was compelled to pay, and did pay under protest, the said several sums for which said lots were so sold as aforesaid, together with twenty-five per cent. interest thereon, at the times hereinafter mentioned." Annexed to the petition was a schedule of the taxes paid, with interest and fees, together with a description of the lots, dates of payment, etc.; and the whole was verified by the affidavit of the petitioner. The board of supervisors rejected the claim, and the plaintiff thereupon appealed to the circuit court. Return having been made to the appeal, and the cause entered for trial in the circuit court, the district attorney moved to dismiss it for want of jurisdiction. The ground of the motion, stated in the notice of motion, was as follows : "For the reason that it appears from

the petition and papers on file in this action, that the board of supervisors of the county of Winnebago, above named, had no jurisdiction of, or legal authority to grant, the prayer of *Joseph Stringham*, the peti tioner; and as the board of supervisors had no juris diction in the premises, this court can take none by appeal to this court." The court granted the motion, and rendered judgment of dismissal of the appeal, without costs to either party. From that judgment the plaintiff brings this appeal.

It is a settled principle respecting the jurisdiction of courts, that where an inferior court or tribunal has no jurisdiction of a cause, the appellate court acquires none by virtue of the appeal. This was so held by this court in *Pelt v. Pelt*, 19 Wis. 193. That was an appeal to the circuit court from the judgment of a justice of the peace, rendered in a cause where the justice had no jurisdiction of the subject-matter of the action. The circuit court proceeded to a trial of the action by a jury, but rejected the evidence offered by the plaintiff, who was the respondent in that court, on the ground that the same would not have been admissible before the justice. A verdict was found for the defendant and appellant, and judgment for costs rendered in his favor. The judg ment was reversed by this court, for the reason that the circuit court, instead of trying the case, should have dismissed the appeal for want of jurisdiction, and be cause no judgment for costs could be rendered in the case. The want of jurisdiction on the part of the justice appeared on the face of the return in the case, and if a motion to dismiss on that ground had been made in the circuit court, there can be no doubt that it must have been granted. The question here presented is of the very same kind. The board of supervisors, as organ ized by law in this state, is a body of men in each county chosen by the electors and clothed with certain specified judicial and legislative powers. In the examination

and allowance of claims against the county, it is a judicial body, of limited and particular jurisdiction. If a claim within its cognizance is presented and disallowed, in whole or in part, an appeal is given from its decision to the circuit court for the county; and the statute expressly provides that such appeal shall be entered, tried and determined, the same as appeals from justices' courts, and costs shall be awarded thereupon in like manner. R. S., ch. 13, §§ 40, 41. The question presented, therefore, on this appeal, supposing the claim of the plaintiff to have been one of which the board of supervisors had no jurisdiction, is precisely like that presented in the case above referred to. The want of jurisdiction, if the board had none, appeared on the face of the return, and the appeal was properly dismissed. The question remains, then, whether the board had any jurisdiction or not. Upon this point there exists very little doubt in my own mind. The claim presented involved a long and tedious trial or investigation of most difficult and complex matters of fact. Numerous witnesses must have been examined, both for and against the petitioner, and not only as to the value of the several lots of the petitioner, which numbered upward of two hundred and forty, but also as to the value of all other adjacent lots; and all the circumstances which affect the price or value of real estate in our large towns and cities, increasing or diminishing it, must have been inquired into and discussed. Besides these, the questions of law involved were of the most grave and serious character. They were such questions as are proper, and proper only, to be investigated in some court of general legal or equitable jurisdiction. That it was never the intention to charge the board of supervisors with the investigation and decision of such questions, seems to me too clear to admit of doubt.

The question as to the source of the powers of the board of supervisors in the examination and allowance

of claims, was considered by this court in *Parker v. Supervisors of Grant Co.*, 1 Wis. 417. It was there held, that the law which gives the county board jurisdiction to examine and settle claims against the county is the second clause of what is now found as the twenty-seventh section of chapter 13, R. S. That clause reads as follows: "To examine and settle all accounts of the receipts and expenses of the county; and to examine, settle and allow all accounts chargeable against such county, and when so settled, they may issue orders therefor as provided by law." "Here," say the court in that case, "is the source of jurisdiction."

To determine, therefore, whether the claim of the plaintiff was one within the jurisdiction of the board of supervisors, it would seem to be only necessary to determine whether it was an "account" or not, within the meaning of the statute. This word, as used in the statute, is undoubtedly susceptible of some fixed and determinate meaning and application. It was used by the legislature for the purpose of pointing out and defining the kind of claims or demands against the county, which the board of supervisors should have power to audit and allow. The board is authorized to examine and settle all accounts of the receipts and expenses of the county, and all accounts chargeable to the county; and the question is, What is an "account?" This is a question which has frequently arisen in the construction of various statutes in which the same word has been found; and the decisions of different courts with respect to it have resulted in very little conflict of opinion. I shall refer to but one such decision, that in *Whitwell v. Willard* (1 Met. [Mass.] 216). The question there arose upon the meaning of the word in a statute which authorized the court to appoint auditors to hear the parties and examine their vouchers, evidence, etc., whenever in a cause at issue it should appear that the trial would require the investigation of accounts, or the examination

of vouchers, by the jury. Chief Justice SHAW, in the course of an opinion of considerable length, defines the word as follows : "The primary idea of account, *computatio,* whether we look to the proceedings of courts of law or equity, is some matter of debt and credit, or demands in the nature of debt and credit between parties. It implies that one is responsible to another for moneys or other things, either on the score of contract or of some fiduciary relation of a public or private nature, created by law or otherwise. That this was the idea contemplated by this statute is manifest, we think, from the whole tenor of it, and from each particular clause." And there can be as little doubt, I think, that the word was used in our statute in the same sense ; and, if it was, then it is clear that the claim of the plaintiff was not one which the supervisors were authorized to examine and allow. It was not a statement of demands in the nature of debt and credit arising out of contracts express or implied between the petitioner and the county, nor out of any fiduciary relation existing between them. It was not a statement of claims in the nature of moneys had and received by the county for the use of the petitioner, as might perhaps have been the case if the lands had not been liable at all to taxation, or if they had been doubly assessed, or the taxes once paid had been collected a second time, or if, for any other cause, there had been no foundation whatever for the taxes. But see *Norton v. The Supervisors of Rock County,* 13 Wis. 611. It was a statement of demands, sounding in tort rather than in contract — a claim for such damages, yet wholly unliquidated, as the plaintiff could prove he had sustained by reason of the malfeasance or disregard of duty of the assessors. If such a claim can be maintained at all against the county, it is obvious that it cannot, as a matter of account, be presented to, and audited and allowed by, the board of supervisors. It must be enforced, if at all, by action against the county in the regular course of judicial proceedings.

But it is argued for the plaintiff, that the "accounts" mentioned in the statute must have a more general application, and that they include every lawful claim, of whatsoever name or nature, which any person may have against the county. This argument is based upon the occurrence of the words "claim" and "demand" in subsequent sections of the statute. Section forty provides for an appeal when any *claim* of any person against a county shall be disallowed in whole or in part. Section forty-two declares that no action shall be maintained by any person against a county upon any *claim* or *demand* other than a county order, until such person shall first have presented his *claim* to the board of supervisors of such county for allowance. And by section forty-three, the determination of the board of supervisors of any county, disallowing, in whole or in part, any *claim* of any person, shall be final and conclusive, and a perpetual bar, unless appealed from, etc. It is claimed that these words remove the restrictions imposed by the granting clause of the statute, and enlarge the jurisdiction of the board of supervisors, so as to include every possible claim or demand against the county; or, otherwise, that they show that, by the word "accounts," in the granting clause, every such claim or demand was intended. The fault of this argument is, I think, in employing the words "claim" and "demand" to enlarge the meaning and application of the word "accounts," instead of employing the latter to restrict the signification of the former. Every account upon which any sum of money or other thing is, or is claimed to be, due to the person presenting it, is a claim or demand; but every claim or demand is not an account. It was very natural and proper for the legislature, in speaking of an account thus presented to the board of supervisors, to call it a claim or demand against the county. The legislature spoke of it just as it was spoken of by counsel in the argument of this cause, and is in this opinion,

and just as any one, in speaking or writing of it, would naturally and properly do. They called it a claim or demand, meaning thereby something claimed or demanded as due from the county upon account, according to the authority previously vested in the board of supervisors, and not intending by those words to change or enlarge such authority. The words, as thus used, are synonymous with "account," and convey the same idea. There can be no doubt, for example, that the word *account* in the thirty-seventh section means the very same thing as the word *claim* in the fortieth.

But if there should still remain any doubt about this construction, it must, I think, be effectually removed by a perusal of section eighteen, and the six following sections of the same chapter. Section eighteen reads as follows : "Whenever any controversy or cause of action shall exist between any of the counties of this state, or between any county and the state, or an individual or individuals, such proceedings shall be had for the purpose of trying and finally settling such controversy, and the same shall be conducted in like manner, and the judgment therein shall have the like effect, as in actions or proceedings between individuals and corporations." The sections which follow prescribe how actions and proceedings by or against counties shall be entitled, how the process shall be served, and the like. These provisions clearly show that there may be some controversies or causes of action between individuals and counties, upon which the individuals may bring suits in the manner in which suits are ordinarily brought against corporations. If the construction of the other parts of the statute here contended for is to prevail, then there can be no such controversies or causes of action upon which suits may be so brought against a county. Every controversy or cause of action between one individual and a county, upon which the individual brings suit, is a claim or demand of some kind made by him against

the county ; and, as every such claim or demand must be presented to the board of supervisors for allowance, and, if disallowed, go by appeal to the circuit court, or be forever barred, it follows that no suit or action whatever can be commenced by original process and prosecuted to final judgment against a county in the manner provided by these sections of the statute, and that they become a dead letter — repealed, in fact, by the construction put upon the other provisions of the same chapter.    It must be a very clear case of conflict indeed, which will authorize a court thus to construe a statute. The rule is, that the court is never to do so, provided the various provisions are capable of harmonious exposition.    The conflict here is so much more imaginary than real, and the intention of the legislature so clear, that, aside from calling attention to a single authority not found in the briefs of counsel, I deem it useless to pursue the subject further.

The provisions of the New York statute regulating the same subject are the basis of our own.    The statutes are, in most respects, word for word, alike.    In *Brady v. Supervisors of New York* (2 Sanford [S. C.], 460) will be found a very full and able discussion of the questions here presented.    The cause went afterward to the court of appeals, and the judgment of the superior court was unanimously affirmed, for the reasons given in that court by Chief Justice OAKLEY.    See same case, 10 N. Y. 260.

For these reasons, I am of opinion that the judgment of the circuit court, dismissing the appeal, should be affirmed.

*By the Court.* — Judgment affirmed.