There is no error in the judgment, and it is affirmed.

Affirmed.

[Opinion delivered May 1, 1883.]

J. D. McCamant et al. v. C. W. Batsell.

(Case No. 4730.)

1. Pleading.— An answer in a suit to recover on a promissory note set up that the note was based on "a gambling transaction." *Held*, that in the absence of specific averments stating what the real character of the transaction was, or that plaintiff's connection therewith was such as to make it unlawful between the parties, an exception to that portion of the answer was properly sustained.

2. Pleading.— Where a suit is based upon the former suretyship of plaintiff for the defendant, and the payment, by plaintiff, of defendant's debt, the cause of action cannot be stated as an "account" or "open account" within the meaning of article 2266, R. S., which the plaintiff may establish by his *ex parte* affidavit. Any other construction of the statute would make the *ex parte* affidavit perform the office of establishing, not only that plaintiff had paid the amount of money specified, but that there was a contract between defendant and himself which made him liable as surety to pay it, in the face of the fact that the note itself would afford better evidence that the suretyship existed.

3. Practice.— The statute (R. S., art. 1265), which provides among other things that an answer setting up "that an account which is the foundation of the plaintiff's action, and supported by an affidavit, is not just," must be denied by an answer so verified, and that "in such case the answer shall set forth the items and particulars which are unjust," regulates the manner of pleading, but does not relieve a plaintiff from the necessity of proving his case by competent evidence.

4. Statutes construed.— Article 2266, R. S., which makes an account supported by affidavit *prima facie* evidence of its correctness in certain cases, prescribes a rule of evidence applicable only to open accounts.

5. Same.—The word *account*, as used in that statute, has its popular, rather than a technical, signification, and applies to transactions between persons, in which, by sale upon the one side, and purchase upon the other, the relation of debtor and creditor is created by general course of dealing, and does not apply to one or more isolated transactions resting upon special contract.

6. Statute construed.— When the liability of the defendant rests upon the fact that the plaintiff was his surety and has paid a debt for him, that liability is the result of contract, which fixes its extent, the law fixing the time when it should be paid; thus the element of uncertainty is wanting, and it cannot constitute an "account" within the meaning of art. 2266, R. S.

7. STATUTES CONSTRUED.— To give the statute a construction which would require a defendant to swear that a transaction between the plaintiff and third persons, of which he might have no personal knowledge, either did or did not occur, in whole or in part, before he could be permitted to controvert the *ex parte* affidavit of his adversary, would be to encourage swearing without knowledge, or in some cases to forego a just defense which might be clearly established under settled rules of evidence.

8. ATTACHMENT.— Land conveyed without consideration and with no intention to vest the title in the apparent purchaser, but that it may be held by him in trust to be sold for the vendor, is subject to attachment for the debts of the vendor contracted afterwards.

APPEAL from Tarrant. Tried below before the Hon. A. J. Hood.

Suit instituted on the 25th day of June, 1881, against John D. McCamant, one of the appellants, to recover $525.95, paid by appellee as surety to Tom Randolph, on a note held by him against McCamant and appellee as surety; also the sum of $547.74, paid by appellee as surety of J. D. McCamant to Kirkpatrick & Co., and asking for a writ of attachment.

On the 25th day of June, 1881, a writ of attachment was issued, and levied the same day on the land in controversy. On the 28th day of June, 1881, T. J. McCamant, by J. D. McCamant, attorney in fact, sold the land to J. W. Gray. On the 16th day of July, 1881, plaintiff filed an amended petition, making J. W. Gray and T. J. McCamant parties to the suit, alleging fraud in sale of land by T. J. McCamant to J. W. Gray, and prayed cancellation of the deed.

Answer by a general denial.

J. W. Gray filed an answer containing general and special exceptions, general denial, plea of purchase in good faith without notice of any fraud, and alleging that T. J. McCamant, the party under whom he claimed, purchased the land long anterior to the accrual of appellee's claim.

J. D. McCamant filed amended answer, containing general demurrer and general denial; plea of partnership between himself and appellee in the transactions declared on in the petition; plea of partial payment, and alleging that the transactions out of which grew his pretended liabilities to appellee was a dealing or gambling in cotton futures, and therefore contrary to law, and could not support an action.

Appellee filed a motion to strike out so much of amended answer of McCamant as set up the illegality of consideration, because it came too late.

Motion was sustained by the court, and the portion of said answer attacking the consideration was stricken out, appellant excepting.

Appellee introduced in evidence a note payable to Tom Randolph and the verified account stated in opinion.

Appellee then read the writ of attachment of date the 25th day of June, 1881, commanding the seizure of property of J. D. McCamant in Tarrant county; the sheriff's return showing seizure of land in controversy on same day; power of attorney from T. J. McCamant to J. D. McCamant of date the 28th day of October, 1878; also deed of T. J. McCamant by J. D. McCamant to J. W. Gray of date the 28th of June, 1881, for the land. ·

Appellee then read deposition of T. J. McCamant, who testified that he was brother of J. D. McCamant; that the latter made him a deed to some land near Fort Worth, Texas; that he did not purchase the land, but that there were some matters between him and J. D. McCamant, "and he made me the deed, and said that perhaps I could sell the land to some emigrant coming to Texas or trade it for land here in Virginia that would suit me. I did not purchase it or pay anything for it, and did not know the deed was going to be made until it was made and sent to me in Virginia, where I then resided. I suppose the deed conveyed the land described in third interrogatory. We had some correspondence in reference to my trading the land. The deed was sent to me in the fall of 1876, and I kept it a year or more, and, not being able to sell, I sent it to J. D. McCamant, and also sent him a power of attorney authorizing him to sell it. I did not claim or control the land only for the purpose of trading it. I know nothing of the solvency of J. D. McCamant; he has never reported the sale of the land to me or accounted for the proceeds, and is under no obligation to do so."

Appellant offered no evidence.

The court rendered judgment for amount claimed, foreclosed attachment lien on the land, and canceled the deeds under which Gray claimed the land; also the power of attorney.

*M. D. Priest*, for appellant.

*Hare & Head*, for appellee, on the defense based on "gambling transaction," cited De Leon v. Trevino, 49 Tex., 88; Mills v. Johnson, 23 Tex., 308; Ford v. Keith, 1 Mass., 138; Johnson v. Johnson, 11 Mass., 359; Texas Pleading and Practice (Sayles & Bassett), 25, 26.

*Finley & Pasco*, for appellee Gray.

STAYTON, ASSOCIATE JUSTICE.— The court did not err in sustaining the exception to so much of defendant's answer as set up that the

note and other indebtedness which the appellee claimed to have paid as surety for the defendant McCamant was based upon a "gambling transaction" by the defendant in cotton futures.

The answer in this respect does not show what the real transaction was, nor that the plaintiff had such connection with it as to make it an unlawful transaction between them, even if such was its character between McCamant and Randolph and Kirkpatrick & Co. It states mere conclusions of law and not facts.

The suit was brought to recover certain sums of money which the plaintiff claimed that he had paid as surety to Randolph on a note which was the joint and several note of himself and McCamant, and upon the face of which they both appear to be principals. The residue was alleged to have been paid to Kirkpatrick & Co. as surety for McCamant, but the character of the indebtedness, whether by note, bill, or otherwise, is not made to appear either in the pleadings or evidence.

The sums of money which the plaintiff claimed to have paid for McCamant as his surety were stated in the form of an account, as follows:

T. D. McCAMANT, To C. W. BATSELL, *Dr.*

June 24, 1831.   To amount paid as security for you on note to Tom Randolph, cash....................................................... $525 95
June 10, 1831.   To amount paid as security for you to Kirkpatrick & Co.....   547 74

Total ...................................................... $1,073 69

This was sworn to as open accounts are permitted to be under art. 2266, R. S.

The third assignment of errors is:

"The court erred in admitting as evidence the sworn account of plaintiff, because:

"1st. There was no proof to establish said account, except the *ex parte* affidavit of plaintiff.

"2d. While the items in said account are proper subjects of an allegation in *assumpsit*, they cannot be pleaded as matter of account, and thereby dispense with proof of the original indebtedness of J. D. McCamant, the suretyship of plaintiff, and the payment of the same by plaintiff.

"3d. Said items are not the character of items contemplated by the statute on the subject of sworn accounts, which statute contemplates items of trade and merchandise usually changing hands among citizens, and does not contemplate transactions where liability arises by implication of law from the payment of the debt of

the principal by the surety, nor in any case where the liability is a question of law, and not of direct promise, express or implied."

On the trial the court permitted the statement of indebtedness above set out, together with a note executed to Randolph by Mc-Camant and Batsell, the payment of which constituted the first item in the statement, to be read in evidence, over the objections of the defendants, which were substantially the same as the assignment of error, to which ruling a bill of exceptions was taken. There was no other evidence in the case to establish the indebtedness of McCamant to Batsell.

The Revised Statutes provide that answers setting up certain defenses shall be verified by affidavit, and among others it provides "that an account which is the foundation of the plaintiff's action, and supported by an affidavit, is not just," must be denied by an answer so verified, and that "in such case the answer shall set forth the items and particulars which are unjust." R. S., 1265. This statute regulates the manner of pleading, but does not relieve a plaintiff from the necessity of proving his case by competent evidence.

Art. 2266, R. S., is as follows: "When any action or defense is founded upon an open account, supported by the affidavit of the party, his agent or attorney, taken before some officer authorized to administer oaths, to the effect that such account is, within the knowledge of the affiant, just and true, that it is due, and that all just and lawful offsets, payment and credits have been allowed, the same shall be taken as *prima facie* evidence thereof, unless the defendant shall, at least one day before the trial, file a written denial under oath, stating that such account is not just or true, in whole or in part, and if in part only, stating the items and particulars which are unjust. When he fails to file such affidavit he shall not be permitted to deny the account or any item therein, as the case may be."

This statute prescribes a rule of evidence, and in terms is applicable only to *open accounts*.

To authorize proof of indebtedness to be made by the affidavit of the plaintiff, the action must be upon an *open account*. What is meant by these words as used in the statute is not free from doubt. An "account" has been defined to be "a detailed statement of the mutual demands in the nature of debt and credit between parties, arising out of contracts or some fiduciary relation." 1 Metcalf, 216; 24 Wis., 594.

As used in the statutes of this state, in act referred to, we believe

that the word "account" is used in its popular sense, rather than in a technical sense, and that it applies to transactions between persons in which, by sale upon the one side and purchase upon the other, the title to personal property passes from the one to the other, and the relation of debtor and creditor is thereby created by general course of dealing; and that it does not mean one or more isolated transactions resting upon special contract.

This construction is indicated to be the true one by art. 3204, R. S., which provides that "In all accounts, except those between merchant and merchant, as aforesaid, their factors and agents, the respective times or dates of the delivery of the several articles charged shall be particularly specified, and limitation shall run against each item from the date of such delivery, unless otherwise specially contracted."

This article evidently has reference to dealings between persons in which there is a sale and delivery of personal property by one to another, from which, by contract, express or implied, the receiver becomes the debtor. As here used, the word "sale" is used in its broadest sense, and embraces all transactions by which the title to personal property passes from one person to another.

The third subdivision of art. 3205, R. S., having reference to " mutual and current accounts concerning the *trade of merchandise* between merchant and merchant," conveys the same idea, for this refers to merchants, persons whose business it is to sell and buy merchandise; and to the *trade* of such persons, which is the buying and selling of *merchandise,* by which term is understood " all those things which merchants sell, either at wholesale or retail, as dry goods, hardware, groceries, drugs, etc." 2 Bouvier, words " Merchant " and " Merchandise."

The word "account" is presumed to have the same meaning in all of the articles of the statute referred to, there being nothing in the context to indicate a different intention.

An "open account" is defined to be "one in respect to which nothing has occurred to bind either party by its statements; an account which is yet fully open to be disputed." Abbott's Law Dictionary. If this definition be correct, the matter sued upon cannot be an *open account;* for the liability of the defendant, if he be the principal debtor, and the plaintiff only his surety, is, upon payment of the debt by the surety, absolutely fixed as to the amount of the debt and the liability of the defendant to pay it.

An account is said to be open, also, when there have been running or current dealings between the parties, and the account is kept open

with the expectation of further dealings. Gardiner *v.* Harrison, 6 Ala., 438. Such is not this case.

In Whittlesey *v.* Spofford, 47 Tex., 17, it was said that the term "open account" is used in apposition to a stated account, wherein an account is closed by an assent to its correctness by the party charged. That the term may be so used in many instances, we have no doubt; but it does not follow that it is used in no other sense.

Where there are mutual dealings between parties involving items of debits and credits on each side, or debits on the one side and credits on the other, and an agreement as to the balance due upon the account is made, then by the one agreement the account becomes a stated account.

It would seem that an account consisting of many items, based upon agreements as to each item as to the price and time of payment, would not be an *open account,* any more than would an account in reference to which, by one agreement made after all the items of account had been sold and delivered, the price and time of payment was fixed.

The word "open" indicates that there is something undetermined by contract of the parties or by the application of settled rules of law, and it would seem that an account cannot be said to be *open* when there remains no term of the contract to be settled by agreement of the parties.

In the case of Sheppard *v.* Wilkins, 1 Ala. (N. S.), 64, it appeared that the plaintiff sold to the defendant five loads of corn at one and the same time, and that the price due therefor was due upon delivery, but there was no price agreed upon.

In considering whether the account was an open account or not, the court said: "It may be assumed that, in all cases where the contract is expressed and the duties of each are defined at the time, that it is not an open account. A contract may be made for the sale of goods, or to build a house, or to perform any other duty, and although it may never be reduced to writing, it will not, for that omission, become an open account. There is certainly nothing in the statute from which we can arrive at the conclusion that all accounts must be considered as open which are not stated or reduced to writing. A contract is certainly neither the one nor the other if all its terms are fixed and certain. From this authority it appears that a contract, not reduced to writing, not stated, and consisting of more items than one, is not necessarily an '*open account,*' within the meaning of the statute. For example, if a number of articles be sold and delivered at the same time, and the price, amount and

time of payment agreed on, this would not be an open account, because all the terms of the contract are agreed on and settled. On the other hand, if a single article be sold and delivered, and the price or time of payment be left in uncertainty — this is an open account, because there is a term of the contract to be ascertained,— the account is therefore unliquidated; it is *open*."

If the liability of the defendant in this cause rests solely, as it is alleged, upon the facts that the plaintiff was his surety and has paid the debts, then it follows as a matter of law that that relation between them is the result of contract, by which the extent of the liability of the defendant is fixed; and in reference to the time the sum so paid by the plaintiff became due to him, the law determines that absolutely, and there is no element of uncertainty in the case, the facts of suretyship and payment being established.

: We are, therefore, of the opinion that the debt sued upon is not an " account " or "open account" within the meaning of art. 2266, Revised Statutes, which a plaintiff may establish by his *ex parte* affidavit.

The intention of the statute was evidently to give to the *ex parte* affidavit an effect similar to that given to the books of a shop-keeper, and it was never held that such books might be used to prove collateral facts transpiring between a plaintiff and some other person. 1 Greenleaf, 119, note; Poultney v. Ross, 1 Dall., 258; Kerr & Co. v. Love, 1 Wash., 172; Deas v. Darly, 1 N. & McC., 436.

In this case the plaintiff sought to prove by his own affidavit not only that he had paid to Randolph and to Kirkpatrick & Co. the several sums of money claimed by him, but also thus to prove that there was a contract between him and the defendant which made him liable as surety so to pay it, and this in the face of the fact that there must be better evidence that such suretyship existed; for he could not have become liable as surety to pay the debts of the defendant without a contract in writing; and in the face of the fact that the note of himself and the defendant to Randolph evidences a joint and several indebtedness, for which the one was as much bound as principal as the other, and with which his affidavit was inconsistent.

It is not believed that a debt which is not the result of a transaction between the parties to it, and in reference to which they have equal means of knowledge, but which is the result of a transaction between one of them and some other person, can constitute such an account as the statute contemplates may be proved by the affidavit of a plaintiff, or as a defendant will be compelled to deny in whole

or in part under oath, before he will be permitted to introduce evidence to disprove a *prima facie* case which the statute contemplates may be made by the affidavit.

The statute requires a plaintiff to swear that "such account is, *within the knowledge of the affiant*, just and true; that it is due, and that all just and lawful offsets, payments and credits have been allowed." The law does not permit, much less encourage, guesswork in swearing; and to require a defendant to swear that a transaction between a plaintiff and a third person, of which he may have no personal knowledge whatever, either did or did not occur in whole or in part, before he will be permitted to controvert the *ex parte* affidavit of his adversary, would be to encourage swearing without knowledge, which is morally perjury, or in some cases to forego a just defense, which might be clearly established under the well settled rules of evidence.

Although J. D. McCamant had made a deed for the land prior to the origin of the debts which are made the basis of this suit, yet if such conveyance was not made with intent to vest the title in his apparent vendee, but for the purpose of enabling the vendee to sell it for his benefit; or if, for any other lawful purpose, the title to the land was placed in the vendee, T. J. McCamant, to be held in trust for J. D. McCamant, and he so held it, then it was subject to attachment for a debt of the defendant, and the defendant Gray would be bound by the result of this suit, he having purchased since the attachment was levied upon the land.

But either of the defendants may show, if they can, that J. D. McCamant is not indebted to the plaintiff; and, if they so show, this will give full protection to the defendant Gray.

For the errors indicated the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered May 1, 1883.]