**PANTHER OIL & GREASE MFG. CO. v. GARDNER.**

No. 12444.

Court of Civil Appeals of Texas. Fort Worth.

March 21, 1931.

Motion Denied April 18, 1931.

Alva W. Bounds and Cecil A. Morgan, both of Fort Worth, for appellant.

W. L. Coley, Ira Whittenberg, and L. R. Swanger, all of Ft. Worth, for appellee.

BUCK, J.

This is an appeal from a judgment in the county court at law No. 2, Tarrant county,

in the case of Panther Oil & Grease Manufacturing Company v. P. E. Gardner. Plaintiff alleged that on December 1, 1926, it employed the defendant as a sales agent under an oral contract, by the terms of which the defendant promised and agreed with the plaintiff that he would sell the goods, wares, and merchandise offered by the plaintiff for sale upon a commission basis; that is, that the defendant was to receive a certain per cent. of the money obtained from sales of plaintiff's goods made by him. Said contract further provided that defendant was to receive no salary, but plaintiff promised and agreed to advance to defendant, against commissions earned by him or to be earned by him, sums of money as might be required by him; that at the request of defendant, plaintiff advanced certain sums of money, to wit, on 11/8/26, $50; 11/16/26, $75; 11/27/26, $75; 12/3/26, $75; 12/13/26, $75; 12/24/27 [26?], $75; 12/31/27 [26?], $100; 1/15/27, $50.

That during the period of the employment of the defendant by the plaintiff, the defendant sold goods and earned commissions as follows, which were credited upon the books of the company to the defendant, to wit: 12/30/26, $181.23; 12/31/26, $155.17; 1/31/27, $7.29.

That on or about the first day of February, 1927, the defendant left the employment of plaintiff, and the contract of employment was thereupon in all things terminated; that as appears from the statement of the advancements made by the plaintiff to the defendant and the commissions earned by him at the date of the termination of said employment, the defendant was indebted to the plaintiff in the sum of $231.31; that plaintiff has made repeated demands upon plaintiff to pay said indebtedness, but the defendant has failed and refused to pay the same or any part thereof. Plaintiff further alleged that said account was mutual as between plaintiff and defendant.

In defendant's first amended original answer, he interposed the two-year statute of limitation, because it appeared that the defendant had quit the employment of plaintiff on January 31, 1927. Suit was filed November 20, 1929. Appellant urges that under article 5527, subd. 3, Rev. Civ. Statutes, the period of limitation is for four years. This statute reads:

"There shall be commenced and prosecuted within four years after the cause of action shall have accrued, and not afterward, all actions or suits in court of the following description. * * *

"3. Actions by one partner against his copartner for a settlement of the partnership accounts, or upon mutual and current accounts concerning the trade of merchandise between merchant and merchant, their fac-

tors or agents; and the cause of action shall be considered as having accrued on a cessation of the dealings in which they were interested together."

The trial court concluded that said subdivision 3 of article 5527 did not apply, but that the indebtedness sued on was controlled by the usual two-year statute of limitation. From a judgment for defendant, the plaintiff has appealed.

### Opinion.

In Dwight, Skinner & Co. v. Matthews, Miller & Co., 94 Tex. 533, 62 S. W. 1052, 1053, cited by both appellant and appellee, the court said: "The question remains, is it not an action upon a 'mutual and current account concerning the trade of merchandise between merchant and merchant, their factors and agents,' within the third subdivision of the same article? If so, the period of four years applies, and the action was not barred when the original petition was filed, nor when the amended petition was filed, March 14, 1898, since, under the provision referred to, limitation did not begin until 'the cessation of the dealings in which they were interested together,' and the petition showed that such cessation took place in 1895. We think the account, judging from the allegations, is one of the character defined in the statute to which we have referred. The character of the business of the parties was such as the statute requires, since they were firms of merchants, and one was the factor of the other. By such firms, in their dealings with each other, the draft was drawn and paid, and the wool consigned and sold and accounted for; and in these transactions all of the items of the account originated. It therefore appears to be one concerning the trade of merchandise. It consists of items of debt and credit in favor of and against each party, extends through a considerable period of time, and has never been agreed upon so as to become a stated account. Consequently it is an open, mutual, and current account, and has every element required by the decisions in this state for such an account. Whittlesey v. Spofford, 47 Tex. 13; Richardson v. Vaughan, 86 Tex. 95, 23 S. W. 640; Guichard v. Superveile, 11 Tex. 522; Judd v. Sampson & Co., 13 Tex. 19; Leavitt v. Gooch, 12 Tex. 95. The draft was drawn by defendant firm, engaged in a mercantile business, on the plaintiffs, also a firm engaged in such business, and so the wool was consigned and received. This sufficiently shows the character of the dealings, and that they were done in the trade of merchandise, to meet the demurrer urging two years' limitation; and four years had not elapsed after limitation commenced."

Appellee urges that it is not shown that the defendant ever had possession of the goods sold, and he was certainly not a merchant or a factor, nor was he an agent, as the term is

used in article 5527, subd. 3, but was merely an employee of plaintiff below, working on a commission basis, and in reply to the appellant's argument, that there was a confidential relation created in the instant case in the trade of the merchandise, appellee urges that there was no more confidential relation or trust in the instant case than any other advancement or loan to be repaid out of earnings of an employee, whether in the trade of merchandise or not.

In the case of Mitchell-Greer Co. v. Mitchell, 246 S. W. 690, 691, by Chief Justice Conner of this court, it is said:

"We conclude that the court did not err in sustaining the general and special exceptions to the petition. The original petition, made part of the record before us, contains allegations to the effect that after the inventory above mentioned had been taken the capital stock of the company had been reduced to $100,000, and there is no contention that any part of the capital stock subscribed for by the defendant Mitchell is unpaid, except it is insisted that the $1,194 at which the goods on commission was valued must be construed as an unpaid part of the written subscription of the defendant Mitchell, but we think this cannot properly be so construed. This error in the inventory was discovered in February, 1914, and there is no allegation that thereupon Mitchell was called upon to complete his subscription by the payment of a further sum. On the contrary, the matter was treated as an error in the inventory, and the amount charged to Mitchell on the books of the company. * * * It would thus seem to conclusively appear from the allegations as a whole that the item of $1,194 is but a mere balance of the account existing between the defendant Mitchell and the plaintiff corporation, and hence but a simple debt instead of an unpaid part of a written obligation. If so, the indebtedness and the cause of action arising therefrom certainly existed as early as November, 1914, at which time Mitchell severed his connection with the corporation. * * * It is true that both Greer and Mitchell were merchants, but Mitchell, as president of the corporation, was but its agent, and the items with which he is charged, for the most part, consist merely of such items of credit and debit as generally arise between an ordinary employer and employee. It is true that the $1,194 item appears placed in the account of Mitchell-Greer Company, but this does not change the suit or character of the item so placed. Appellant's cause of action, based upon the item of $1,194, is, we think, either a suit for money had and received as a result of an error, or else a suit to recover for failure of title to part of the goods sold. In so far as the suit is based on the item of $1,388.17, it seems a clear case of suit for debt against an agent for money had and received which he collected and wrongfully refused to pay over to his principal.

"In McCamant v. Batsell, 59 Tex. 363, our Supreme Court said:

"'As used in the statutes of this state, in act above referred to [referring to act relating to verified accounts], we believe that the word "account" is used in its popular sense, rather than in a technical sense, and that it applies to transactions between persons in which, by sale upon the one side and purchase upon the other, the title to personal property passes from the one to the other, and the relation of debtor and creditor is thereby created by general course of dealing, and that it does not mean one or more isolated transactions resting upon special contract.'"

In Dillard v. Dugger Grocery Co., 232 S. W. 360, 361, the Austin Court of Civil Appeals said:

"To give the holder of an open account the benefit of the four-year statute of limitation, it is not enough that the transactions should be between merchant and merchant. The other necessary elements of the statute are that there must be 'mutual and current accounts concerning the trade of merchandise.' Here is where the appellee's case fails. If the isolated instances in which some bottles and cases were turned in for credit could be considered to have been between merchant and merchant, there was no evidence whatever that there were ever any existing mutual or current accounts between the parties. These transactions were but payments on account. There was never but one account. The exception to the two-year statute does not apply where the items of the account are unilateral, as in this case.

"We do not hold that the mere failure of appellant to keep books or to charge appellee with the items of credit would control the question. Our holding is that the undisputed evidence shows there was no occasion to do so. There was no open running account on both sides, with mutual credits, but simply a few instances of payment on account by merchandise, by one party only. The principles announced in the following cases are deemed decisive of the questions," citing cases.

In Guichard v. Superveile, 11 Tex. 522, it is said: "We have seen from the facts in this case, although the sale of the goods may have been from one merchant to another, yet it was not an account current, of mutual and reciprocal demands, and therefore not within the exception to the statute of two years limitation, that barred open accounts." See Handel v. Macdonell (Tex. Civ. App.) 25 S. W. 133.

We conclude that the trial court did not err in sustaining the two-year statute of limitation, and in dismissing the suit.