**Opinion issued March 12, 2015**



In The

# Court of Appeals
### For The
## First District of Texas

_____

### NO. 01-14-00571-CV
_____

### TED KALDIS A/K/A TED LEFTERIS KALDIS, Appellant

### V.

### CREST FINANCE, Appellee

---

### On Appeal from the 281st District Court
### Harris County, Texas
### Trial Court Case No. 2012-71189

---

## O P I N I O N

Following a bench trial, the trial court rendered judgment against Ted Kaldis a/k/a

Ted Lefteris Kaldis for $51,012.66 in favor of Crest Finance. On appeal, Kaldis

asserts that the trial court erred when it ruled that he had not shown that Crest Finance's claim was barred by limitations.

We affirm.

## Background

On May 25, 2007, Kaldis signed a Business Line of Credit Agreement ("the Agreement") with Wachovia Bank. The Agreement provided that the maximum credit limit—that is, the maximum amount that Kaldis could have as an outstanding balance on the account—was $50,000. Kaldis obtained funds on the line of credit by using access checks or a debit card.

The Agreement provided that Kaldis would make a minimum monthly payment on any outstanding balance. The Agreement also provided that, if Kaldis did not timely make the minimum monthly payment, a late fee would be added to the outstanding balance on the next monthly billing cycle. The late fee would reduce the amount of credit available to Kaldis. In addition, the Agreement stated that, upon written notice to Kaldis, Wachovia could terminate Kaldis's right to obtain funds or reduce the available credit limit. On proper written notice, Wachovia could also, at its discretion, demand payment in full on the outstanding balance from Kaldis.

Through August 2008, Kaldis made timely payments to Wachovia as provided by the Agreement. Kaldis made his last timely payment on August 8,

2008. Kaldis's next payment of $396.51 was due on September 5, 2008; Kaldis did not make this payment or any payment thereafter.

Wachovia's account statement, dated September 10, 2008, indicated that the $396.51 was past due and needed to be paid immediately. It stated that Kaldis's next payment of $361.71 was due on October 5, 2008. The statement reflected that Kaldis's outstanding balance on the account was $49,031.92 with an available credit line of $209.00.

Wachovia's next account statement, dated October 13, 2008, reflected that Kaldis had an outstanding balance of $50,207.84 with no available credit. The past due payments, which were immediately payable, totaled $758.22. According to the statement, another payment of $427.70 was due on November 7, 2008.

Wachovia's account statement, dated November 11, 2008, indicated that $1,175.92 was past due and payable immediately. Late fees and interest continued to be assessed on the account. The statement showed that a new minimum payment of $348.25 was due on December 6, 2008.

The November statement also informed Kaldis, under the heading "Important Information," as follows: "Funds access has been terminated as a result of delinquent payment. Repayment is required as contracted. For options, call [phone number]."

The December 10, 2008 statement also contained the "Important Information." In addition, the December statement reflected an outstanding account balance of $50,887.66, past due payments totaling $1,524.17, and a new minimum payment of $331.57, which was due January 4, 2009. The statement also reflected that late fees and interest continued to be charged on the account.

Wachovia's January 12, 2009 statement showed that payments totaling $1,855,74 were past due. The statement again informed Kaldis, "Funds access has been terminated as a result of delinquent payment. Repayment is required as contracted. For options, call [phone number]." For the first time, the statement informed Kaldis, "Your account is currently closed."

The February 2009 statement also showed that the account was closed. It reflected a balance of $51,012.66. A statement, dated March 24, 2009, indicated that Wachovia had charged off the account.

Through a series of transactions, Kaldis's account with Wachovia was ultimately transferred and assigned to Crest Finance. Crest Finance filed suit against Kaldis on December 3, 2012. Crest Finance sought to recover $51,012.66 from Kaldis, claiming that he owed that amount under the terms of the Business Line Credit Agreement.

Kaldis answered the suit. He asserted a number of affirmative defenses, including limitations.

The suit was tried to the bench. To support its claim, Crest Finance offered the testimony of its corporate representative, Steve Niermann, and documentary evidence, including the Business Line Credit Agreement and the monthly account statements. Kaldis also testified.

At trial, Kaldis continued to assert the affirmative defense of limitations. He claimed that Crest Finance was required to file suit within four years of when a cause of action accrued. Kaldis asserted that Crest Finance's claim accrued when he missed his first payment in September 2008. Thus, Kaldis claimed that Crest Finance's suit was time-barred because it did not file suit until December 2012.

At the end of trial, the trial court requested briefing on the limitations issue to determine "when does a cause of action like this [on a line of credit] accrue." In its briefing, Crest Finance averred that, because it had filed suit on an "open account," its cause of action accrued "on the day that the dealings in which the parties were interested together ceased," as stated in Texas Civil Practice and Remedies Code section 16.004(c). Applying this standard, Crest Finance asserted that its cause of action accrued no earlier than February 2009,[1] when Wachovia closed Kaldis's account.

In his post-trial briefing, Kaldis asserted that Crest Finance had filed a breach of contract action for collection of a debt governed by Texas Civil Practice

---

[1] The evidence showed that Wachovia had already closed Kaldis's account in January 2009.

and Remedies Code section 16.004(a)(3). Kaldis averred that, under that provision, Crest Finance's claim accrued when he first breached the Agreement by failing to make his September 2008 payment. Kaldis argued that Crest Finance's suit is time barred because it was filed more than four years later.

Following submission of the briefing, the trial court rendered judgment against Kaldis in favor of Crest Finance for $51,012.66. Later, at Kaldis's request, the trial court filed findings of fact and conclusions of law. Among its conclusions of law, the trial court determined as follows:

> 2. The statute of limitations on a claim for debt based on breach of contract is four years from the time the cause of action accrues. TEX. CIV. PRAC. & REM. CODE § 16.004(a).

> 3. The statute of limitations on an action on an open account is four years after the day that the cause of action accrues, which is "the day that the dealings in which the parties were interested together cease." TEX. CIV. PRAC. & REM. CODE § 16.004(c).

> 4. [Kaldis] had the burden of proof on his affirmative defenses and had the burden to establish "the date upon which dealings between the parties ceased." *Capital One Bank, NA v Conti*, 345 S.W.3d 490,492 (Tex. App.—San Antonio 2011, no pet).

> 5. [Kaldis] failed to meet his burden of proof to show that the dealings between the parties ceased more than four years before the lawsuit was filed.

> 6. [Crest Finance's] claim is not barred by the statute of limitations.

> This appeal followed in which Kaldis identifies two issues.

## Statute of Limitations

### A. The Dispute

In his first issue, Kaldis claims that the trial court erred when it determined that Crest Finance's claim was not barred by limitations. As they did in the trial court, the parties dispute which limitations provision of Civil Practice and Remedies Code section 16.004 applies to Crest Finance's claim against Kaldis.

Section 16.004 reads, in relevant part, as follows:

(a) A person must bring suit on the following actions not later than four years after the day the cause of action accrues:

. . . .

    (3) debt;

. . . .

(c) A person must bring suit . . . on an open or stated account . . . not later than four years after the day that the cause of action accrues. For purposes of this subsection, the cause of action accrues on the day that the dealings in which the parties were interested together cease.

TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(a)(3), (c) (Vernon 2002).

Kaldis asserts that Crest Finance's suit is a debt action, governed by section 16.004(a)(3). Kaldis avers that Crest Finance's cause of action accrued in September 2008, when he first missed his payment on the line of credit account.

Crest Finance counters that its suit was a suit on an open account as provided in section 16.004(c). *See id.* § 16.004(c). Pursuant to that section, its cause of action accrues "on the day that the dealings in which the parties were

interested together cease." *See id.* Crest Finance asserts that Kaldis did not meet his burden to show that it filed its lawsuit more than four years after the parties ceased doing business. From its conclusions of law, it is apparent that the trial court agreed with Crest Finance that this is a suit on an open account governed by section 16.004(c).

Neither party disputes the material facts pertinent to determining whether Crest Finance's suit was time-barred. Rather, as discussed, the dispute centers on whether Texas Civil Practice and Remedies Code section 16.004(a)(3) or section 16.004(c) applies. This in turn determines when Crest Finance's claim accrued. Thus, the critical issue to be determined here is whether this was an action on an open account or simply an action on a debt. If it was an action on an open account, then section 16.004(c) governs the limitations issue. *See id.*

## B. Standard of Review

Questions regarding which limitations provision applies and when a claim accrues are questions of law. *See Williams v. Khalaf*, 802 S.W.2d 651, 658 (Tex. 1990) (referring to question of which limitations statute applies as a question of law); *see also Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 202 (Tex. 2011) ("Normally, when a cause of action accrues is a question of law."). In addition, at least one Texas court has stated that whether an open account exists, for purposes of determining which limitations provision to applies, presents a

question of law. *See, e.g., Bank of Am. v. Jeff Taylor LLC*, 358 S.W.3d 848, 861 (Tex. App.—Tyler 2012, no pet). We review questions of law de novo. *See In re Humphreys*, 880 S.W.2d 402, 404 (Tex. 1994). Thus, we review de novo whether Crest Finance's suit was a suit on an open account as contemplated by section 16.004(c).

## C.    Analysis

On appeal, Kaldis asserts that Crest Finance did not pursue its claim as a suit on an open account in either its pleadings or at trial. Rather, according to Kaldis, Crest Finance pursued an action for debt as contemplated in section 16.004(a)(3).

Courts have held that the elements of an open account elements are (1) transactions between parties, (2) creating a creditor-debtor relationship through general course of dealing, (3) with the account still being open, and (4) with the expectation of further dealings. *Jeff Taylor LLC*, 358 S.W.3d at 861; *Capital One Bank (USA) v. Conti*, 345 S.W.3d 490, 492 (Tex. App.—San Antonio 2011, no pet.); *Eaves v. Unifund CCR Partners*, 301 S.W.3d 402, 408 (Tex. App.—El Paso 2009, no pet.). In its petition, Crest Finance pled, in part, as follows:

> [Kaldis] made or personally guaranteed a promissory note or business line of credit agreement payable to the order of Wachovia Bank, N.A (the "Note"). [Kaldis] accepted the benefits of money received from the Note and became bound to pay Wachovia Bank, N.A under the terms of the Note as [Kaldis] agreed. The Note and Final Charge Off Statement are attached hereto as Exhibit "A" and incorporated herein by reference.

Such Note is now in default. Default occurred when [Kaldis] failed to timely and properly pay the Note and [Crest Finance] declared it in default. Notice of nonpayment, default and intent to accelerate has been made on [Kaldis]. The maturity of the Note has been accelerated. [Crest Finance] is current owner and holder of the Note.

. . . .

After the allowance of all just and lawful offsets, payments and credits to Defendant, the balance of $51,012.66 on the Note is past due and unpaid.

Crest Finance attached the Business Line of Credit Agreement to its petition. It also attached the account statement from March 2009. The statement indicated that the account balance of $51,012.66 had been charged off by Wachovia on March 24, 2009.

When determining whether a pleading properly includes an allegation, we must look at the pleading from the perspective of the person against whom the pleading is made. *Wilson v. Bloys*, 169 S.W.3d 364, 369 (Tex. App.—Austin 2005, pet. denied) (citing *Erisman v. Thompson*, 167 S.W.2d 731, 733 (Tex. 1943)). In the absence of special exceptions, as here, courts must construe the pleadings liberally in favor of the pleader. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 897 (Tex. 2000). A petition is sufficient if a cause of action reasonably may be inferred from what is stated in the petition, even if an element of the action is not specifically alleged. *Pinter v. Asafi Law Firm*, No. 01–12–00048–CV, 2012 WL 5458426, at * 3 (Tex. App.—Houston [1st Dist.] Nov. 8,

2012, no pet.) (citing *Westcliffe, Inc. v. Bear Creek Const., Ltd.*, 105 S.W.3d 286, 292 (Tex. App.—Dallas 2003, no pet.)); *see Boyles v. Kerr*, 855 S.W.2d 593, 601 (Tex. 1993) (stating courts "should uphold the petition as to a cause of action that may be reasonably inferred from what is specifically stated, even if an element of the cause of action is not specifically alleged").

Kaldis implies that, because Crest Finance is suing for his failure to tender payment under the terms of the Agreement, this is an action for debt and not an action on an open account. We disagree.

The fact that the parties' dealings were governed by an express contract, the Business Line of Credit Agreement, does not convert this into an action for debt. As the Supreme Court of Texas stated long ago: An "open account," in the context of the statute of limitations, "evidently has reference to dealings between persons . . . from which, *by contract, express or implied*, the receiver becomes the debtor." *McCamant v. Batsell*, 59 Tex. 363, 368 (Tex. 1883) (emphasis added). Citing *McCamant*, the Tyler Court of Appeals, in determining whether a claim was a suit on an open account for limitations purposes, stated: "We see no reason to hold that an express contract forecloses the existence of an open account for limitations purposes under Section 16.004(c)." *Jeff Taylor*, 358 S.W.3d at 857. Construing the petition liberally, and given the course of dealings between Kaldis and Wachovia pursuant to the Business Line of Credit Agreement, as will be

discussed *infra*, Kaldis could have reasonably inferred that Crest Finance's petition alleged a cause of action based on an open account.

Crest Finance's pursuit of a claim on an open account became even more apparent at trial. While cross-examining Crest Finance's corporate representative, Steve Niermann, Kaldis's counsel sought to establish that Crest Finance's cause of action accrued in September 2008:

> [Kaldis's counsel:] All right. So on September 6th, then, the account went into default, did it not?
>
> [Niermann:] Not necessarily. You have the right to revolve your account . . . . You have the right to revolve the account. It was not closed until January or February of 2009 and charged off in March of 2009. Because every time we're late with a card doesn't mean our credit card is cutoff and terminated. The lender has the right to revolve it. That's why they call it revolving credit.

. . . .

> Q. And so when those [minimum monthly payments] weren't paid timely then technically this account went into default, didn't it?
>
> A. When you say "technically," I don't know what you mean. Under the terms of the account, it was an *open revolving business line of credit*. A line of credit is different from an installment long-term where you are paying the same amount month after month where each of the payments has its own statute of limitations.
>
> Revolving means that you can revolve the balance to the following month and pay an interest penalty and a late fee penalty probably, maybe an over the limit penalty, but you get to put it to the next month. That is your choice.
>
> After a while you are going to be demanded that you pay more, and that is going to probably be about six months down the line.

(Emphasis added.)

As stated by the Fifth Circuit Court of Appeals in determining a limitations issue under Texas law, an open account "allows for parties with frequent dealings to credit and debit the account without settling it." *Sunshine Traders of El Paso, Inc. v. Dolgencorp, Inc.*, 219 Fed. Appx. 375, 377 (5th Cir. 2007). This is also what Niermann indicated in his testimony. It was apparent from his testimony that Crest Finance was seeking to recover funds due on an open account not on a simple debt.

Other evidence at trial also indicated that Crest Finance was litigating a claim on an open account. As stated, the elements of an open account are (1) transactions between the parties, (2) creating a creditor-debtor relationship through the general course of dealing, (3) with the account still being open, and (4) with the expectation of further dealing. *Jeff Taylor*, 358 S.W.3d at 861; *Conti*, 345 S.W.3d at 492; *Eaves*, 301 S.W.3d at 408.

As discussed, the evidence at trial showed that, in May 2007, Wachovia issued a business line of credit to Kaldis, and Kaldis obtained funds under the credit line. Kaldis made payments on the account to Wachovia until September 2008. Thus, the evidence showed transactions between the parties through the course of dealing and a creditor-debtor relationship between Wachovia and Kaldis, which was extended to Crest Finance when it later purchased Kaldis's account.

With regard to the third and fourth elements, the court in *Eaves*—a case in which the court determined that a credit card account was an "open account"—analyzed what it means for an account to be open with the expectation of further dealings:

> We further find that the account was still open with the expectation of further dealing. Eaves contends that those elements are not met as Lutz testified that Unifund Partners does not currently hold an open account for him, and that there was no expectation that Unifund Partners would ever loan him a dime. At its core, Eaves' argument would force creditors to keep credit available to nonpaying debtors and allow those debtors to continue debiting their accounts after having defaulted. We decline to accept Eaves' argument.

> . . . .

> Once a debtor defaults on his account, although the debtor may not be able to withdraw on the account, his obligation to pay still remains. Here, although Eaves defaulted on his account with Citibank, he still maintained his obligation to pay the debt; therefore, the account was still open with the expectation of further dealings, that is, that Eaves would tender the amount owed.

*Eaves*, 301 S.W.3d at 409.

Here, the evidence showed that, even after Wachovia closed the account in January 2009, and then charged the account off in March 2009, Kaldis was still obligated to pay the full amount owed.[2] Thus, as discussed in *Eaves*, the account

---

[2] Niermann testified regarding the meaning of term "charge off" as follows:

A. A charge-off is when my business or any other business represents to the IRS that a debt is uncollectible and they are going to take a charge, an

remained "open" with the expectation of further dealings, that is, that Kaldis would tender the amount owed. *See id.*

We also note that the evidence—specifically, the September 10, 2008 account statement—showed that, even after he first failed to make his monthly payment, Kaldis still had available credit with Wachovia. Similarly, the October 2008 account statement showed that Wachovia expected Kaldis to make his minimum monthly payment and also pay the past due amounts owed, along with late fees and interest, as required by the Business Line Credit Agreement. The account statements from November and December 2008 indicated that that "repayment is required as contracted" and provided a telephone number for Kaldis to call "for options." In other words, the evidence showed that, even after Kaldis did not make his monthly payments, the account remained open and indicated expectations of further dealings between the parties.

---

expense, against revenues to reduce their overall income. That's all it means. It is a tax mechanism as between the business and the IRS.

Q. Does a charge-off mean that the debtor doesn't have to pay the loan back?

A. No, it doesn't affect the contract law because the charge-off is related to taxation. And in accounting it is also related to whether you continue to run interest on a debt. Because once you charge it off, you also close the account, which is different, but it is usually done at the same time. So that interest quits running, otherwise you would have charged off debts which continue to accrue interest. . . .

When determining whether an open account exists for purposes of limitations, some courts have examined whether a term of the parties' agreement remains "open"; that is, subject to modification *See Jeff Taylor*, 358 S.W.3d at 860–61 (discussing whether an open term is a necessary element to show an open account). For example, in *Conti*, the court stated that "[a] credit card may be considered an open account because, under a credit card agreement, the terms of repayment remain subject to modification, and the parties exchange credits and debits until either party settles the balance and closes the account." *See Conti*, 345 S.W.3d at 491–92. The *Jeff Taylor* court observed, "By this statement, the [*Conti*] court appears to acknowledge that the payment terms of a credit card are not fixed and certain, but it does not incorporate an open term as an element of an open account." *Jeff Taylor*, 358 S.W.3d at 861 (citing *Conti*, 345 S.W.3d at 491–92).

Similarly, here, as noted in *Conti*, under the Business Line of Credit Agreement, "the terms of repayment remain subject to modification, and the parties exchange credits and debits until either party settles the balance and closes the account." *Conti*, 345 S.W.3d at 491–92 (citing *Eaves*, 301 S.W.3d at 409). Significantly, the Agreement stated that, upon written notice to Kaldis, Wachovia could terminate Kaldis's right to obtain funds or reduce the available credit limit. Wachovia could also, at its discretion, demand payment in full on the outstanding balance from Kaldis and change the terms of payment. In these respects, the terms

of the account remained "open." *See Jeff Taylor*, 358 S.W.3d at 864 (concluding that, because amount of payment fluctuated based on other events, payment terms remained open).

Lastly, we note that Kaldis cites the following four cases for the proposition that a cause of action for debt based on breach of contract accrues from the date that a debtor first misses a payment: *Dodeka, L.L.C. v. Campos*, 377 S.W.3d 726, 730 (Tex. App.—San Antonio 2012, no pet.); *Colvin v. Tex. Dow Emps. Credit Union*, No. 01–11–00342–CV, 2012 WL 5544950, at *9 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (mem. op.); *Bicknell v. Wells Fargo Bank, N.A.*, No. 11–08–00203–CV, 2010 WL 1635832, at *2 (Tex. App.—Beaumont Apr. 22, 2010, no pet.) (mem. op.); and *Williams v. Unifund CCR Partners Assignee of Citibank*, 264 S.W.3d 231 (Tex. App.—Houston [1st Dist.] 2008, no pet.). However, of these cases, only *Dodeka* discusses the issue of whether the suit, for limitations purposes, had been brought as a suit on open account or as a claim for debt based on breach of contract. *Dodeka*, 377 S.W.3d at 730. In the other three cases, it appears undisputed that the actions had been brought as a suit for debt based on breach of contract to which Texas Civil Practice and Remedies Code section 16.004(a)(3) applied.

With respect to *Dodecka*, the court rejected the creditor's claim, first made on appeal, that it had brought a suit on an open account. *Id.* The court concluded

that the creditor had only pleaded breach of contract and that the claim had not been tried by consent. *Id.* Signaling that the case was distinguishable, the *Dodecka* court cited *LTD Acquisitions, LLC v. Cook*, No. 04–10–00296–CV, 2011 WL 61634, at *2 (Tex. App.—San Antonio Jan. 5, 2011, no pet.) (mem. op.). In *LTD Acquisitions*, the court determined that—although the creditor had not originally pleaded the claim as an open account—the creditor argued in its motion to reconsider that a credit card account may be brought as an action on an open account, thereby allowing appellate review of the open account claim. *LTD Acquisitions*, 2011 WL 61634, at *2. Here, as discussed, Crest Finance sufficiently raised and tried a suit on an open account.

We conclude that, because this was a suit on open account, the applicable statute of limitations was Texas Civil Practice and Remedies Code section 16.004(c). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(c). Pursuant to that section, Crest Finance's cause of action accrued "on the day that the dealings in which the parties were interested together cease[d]." *Id.* Although Kaldis, as the proponent of the affirmative defense of limitations, bore the burden to show when Crest Finance's cause of action accrued, *see Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 517 (Tex. 1988), the undisputed evidence at trial showed that the parties ceased doing business no earlier than January 2009, when the account statement indicates Kaldis's account was closed. *See Facility Ins. Corp. v.*

*Employers Ins. of Wausau*, 357 F.3d 508, 513 (5th Cir. 2004) (concluding, for purposes of section 16.004(c), that limitations period for a suit concerning a transaction on an open account does not begin running until the account is closed). Thus, we hold that the trial court did not err by concluding that Crest Finance's suit, filed less than four years later, in December 2012, was not barred by limitations. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(c).

We overrule Kaldis's first issue.

### Suit on Sworn Account

In his second issue, Kaldis asserts that Crest Finance has failed to comply with the requirements of Texas Rule of Civil Procedure 185 for filing a suit on a sworn account. *See* TEX. R. CIV. P. 185. However, Crest Finance did not allege in its petition, in the trial court, or in its appellate brief that this is a suit on a sworn account under Rule 185. Nor did the trial court base its judgment on Rule 185.

Accordingly, we overrule Kaldis's second issue.

## Conclusion

We affirm the judgment of the trial court.

Laura Carter Higley
Justice

Panel consists of Justices Keyes, Higley, and Brown.