

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-22-00120-CV

———————————————

STEPHAN D. HWANG, Appellant

V.

CAPITAL ONE NATIONAL ASSOCIATION, Appellee

On Appeal from County Court at Law No. 2
Denton County, Texas
Trial Court No. CV-2018-00578

Before Sudderth, C.J.; Bassel and Wallach, JJ.
Memorandum Opinion by Justice Bassel

## MEMORANDUM OPINION

## I. Introduction

Appellant Stephan D. Hwang appeals a judgment awarding $12,742.61 to Appellee Capital One National Association in its suit for breach of contract and for account stated.[1]  In three issues, Hwang argues that the trial court erred by allegedly awarding damages on a claim on which Capital One presented no evidence, by admitting a business-records affidavit and the attached documents, and by failing to dismiss the case based on his limitations defense.  Because the record contains more than a scintilla of evidence to support the amount of damages awarded on the account-stated claim, because the trial court did not abuse its discretion by admitting the business-records affidavit and the attached documents, and because the record affirmatively demonstrates that the account-stated claim accrued in 2017 and that suit was timely filed in 2018, we rule against Hwang on his three issues.  But because we have found a minor calculation error in the damages, we modify the judgment to correct the calculation error, and we affirm the judgment as modified.

---

[1]Capital One also filed a notice of appeal.  After the deadline passed for Capital One to file its brief as appellant in its appeal, we notified Capital One that its appellant's brief was late.  Capital One responded that it did not intend "to pursue its cross-notice of appeal" and that it would "not be filing a brief in support of its cross-appeal."  Accordingly, we dismiss Capital One's appeal for want of prosecution. *See* Tex. R. App. P. 42.3(b), 43.2(f).

## II. Factual and Procedural Background

On July 10, 2007, Hwang completed a Capital One business-loan application for a $50,000 line of credit for his business. Hwang signed the application as the president of Stephan D. Hwang, P.C. and as the guarantor. The guarantor's signature box on the business-loan application provided that the guarantor agreed to comply with and be bound by the terms and conditions of the Small Business Unsecured Line of Credit Agreement "that will be sent to the [applicant] if the credit is approved" and that the guarantor granted to Capital One "a security interest in and right of offset against any and all present and future funds of any of the undersigned on deposit with Capital One including . . . other deposit accounts in the name of any of the undersigned." Paragraph 9 of the Small Business Unsecured Revolving Line of Credit and Term Loan Agreement,[2] which bound Hwang by virtue of his signature as guarantor on the business-loan application, also provided Capital One with a right of setoff against Hwang's other accounts on deposit with Capital One without requiring prior notice to the borrower or guarantor.[3]

---

[2]The name is slightly different because the version in the appellate record is from 2014 and thus postdates the 2007 version.

[3]Hwang was also subject to Capital One's Rules Governing Deposit Accounts:

By opening or continuing to maintain a deposit account with us, each customer (referred to as 'you' or 'your') agrees to be bound by the applicable provisions of these Rules, and all applicable agreements, disclosures, and other documents, as well as by all applicable federal or state laws, statutes and regulations.

3

Capital One sent Hwang a notice of loan approval stating that the small-business unsecured line of credit in the amount of $50,000 had been approved and that the Small Business Unsecured Line of Credit Agreement was enclosed with the notice. The approval letter's terms and conditions stated that Capital One would automatically debit Hwang, P.C.'s business account (a separate account from the line-of-credit account) to make the minimum monthly payments on the line-of-credit account.

In August 2007, Hwang, P.C. took out $35,000 in advances on the line-of-credit account. By the end of 2007, Hwang, P.C. had exhausted the $50,000 limit on the line of credit. Throughout 2007, 2008, and 2009, Capital One withdrew payments from Hwang, P.C.'s business account.

---

That document also provided Capital One with a right of setoff without requiring Capital One to provide Hwang prior notice:

> To secure payment of any monies that you may owe us or any of our affiliates, for any reason, you grant us a continuing security interest in all funds that you may now and in the future maintain on deposit with us, with the exception of funds held in a trust or fiduciary account, or in an Individual Retirement Account, or in other qualified tax-deferred accounts. You agree that we may apply (set-off) funds that you maintain on deposit with Capital One Bank, or any of its affiliates, against any amount that you may then owe us, or any of our affiliates, under a loan, or Overdraft, or guaranty, or for any other reason at any time and without prior notice to you.

In December 2009, Hwang closed the Hwang, P.C. account that was used to make payments on the line-of-credit account.[4] Thereafter, Capital One activated its right of setoff and drafted payments from Hwang's personal checking account that was on deposit with Capital One. According to Hwang, the withdrawals from his personal account caused its balance to go negative, and so he had to make deposits to avoid overdraft fees.

In March 2017, the last payment was made on the line-of-credit account from Hwang's personal account.[5] In July 2017, Capital One "charged off"[6] the account, which had a remaining balance due of $49,363.91.

In February 2018, Capital One filed a "suit on debt/account stated" and for breach of contract and sought a money judgment against Hwang. Hwang answered with a general denial and pleaded the affirmative defense of limitations.

When the case was initially called for trial, Hwang did not appear, and the trial court rendered a default judgment in favor of Capital One. Hwang appealed the

---

[4]Hwang admitted that the small-business line-of-credit agreement was "actually materially breached in 2009" when he closed the business account and that he had "closed the business account in direct violation of the agreement."

[5]The record is silent as to whether the personal account was closed and does not explain why this was the last payment on the line-of-credit account.

[6]*See Houle v. Capital One Bank (USA), N.A.*, 570 S.W.3d 364, 368 (Tex. App.—El Paso 2018, pet. denied) (op. on reh'g) (stating that account holder's statement included a note that the account had been "'charged off,' which is described as a status change from 'past due'"); *see also Charge off*, Black's Law Dictionary (11th ed. 2019) (defining a "charge off" as "[t]o treat (an account receivable) as a loss or expense because payment is unlikely").

default judgment claiming that he did not receive notice of the trial setting. *See Hwang v. Capital One Nat'l Ass'n*, No. 02-19-00005-CV, 2020 WL 1646582, at *3 (Tex. App.—Fort Worth Apr. 2, 2020, no pet.) (mem. op.). We held that the record reflected that Hwang did not intentionally or with conscious indifference fail to appear for trial and that Hwang met the other elements of the *Craddock* test;[7] thus, we reversed the judgment and remanded the case for further proceedings. *Id.* at *4.

On remand, the trial court held an evidentiary trial. Capital One presented testimony from its representative, who was employed with Capital One as a litigation specialist.[8] Capital One's representative testified that there were transactions between the parties that gave rise to an indebtedness, that there was an agreement that existed between the parties that established the amounts due on the indebtedness, and that Hwang promised to pay Capital One on that indebtedness. Capital One's representative further testified that Hwang had never disputed the amount owed. Instead, he acknowledged the delinquency; he called Capital One during March 2010 and said that he was awaiting a check from his clients and would make payments to bring the account current as soon as he got paid, but that did not happen. In addition to the representative's testimony, Capital One admitted into evidence a business-records affidavit with forty pages of documents attached, including the account's

---

[7]*See Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124, 126 (Tex. 1939) (establishing a three-factor test for setting aside a default judgment).

[8]She explained that her duties were to research charged-off and closed accounts on behalf of Capital One.

transaction detail showing the advances, the payments (including offsets), and the charge-off amount on the line-of-credit account.

Capital One called Hwang as a witness, and he also testified in his case in chief. He attacked the business-records affidavit and Capital One's right of offset[9] but presented no documentary evidence to refute the account's transaction detail. Rather, he relied on the account's transaction detail admitted by Capital One and claimed that "in the final analysis[,] the offsets were sufficient" to bring the account to a zero balance and to show that it was paid in full, despite the balance shown on the account's transaction detail.

At the conclusion of the trial, the trial court asked the parties to put together numbers for the damages calculation. The trial court later held a status hearing at which the parties presented the totals that they had computed for the advances less the payments on the line-of-credit account.[10] After considering both parties' calculations, the trial court ultimately awarded Capital One damages of $12,742.61.

Hwang requested findings of fact and conclusions of law, which the trial court made. Hwang then perfected this appeal.

---

[9]Because Hwang also challenges these items on appeal, we set forth a more detailed summary within each of the related issues in the analysis section below.

[10]The parties also filed spreadsheets with the trial court.

## III. Sufficiency of the Evidence

In his first issue, Hwang argues that the trial court "commit[ted] error when it found for [Capital One] on a claim [on which Capital One] failed to present evidence." Although Hwang specifically challenges conclusion of law 6—"[Capital One] proved all elements on its account[-]stated claim"—he does not set forth the elements of an account-stated claim, nor does he attack a specific element.[11] Instead, the crux of Hwang's argument is that "[t]he final award did not reflect [Capital One's] breach[-]of[-]contract theory for $51,493.63 but awarded $12,742.61, an amount not reflected in any evidence or argument by [Capital One's] suit on debt claim but at the [c]ourt's own initiative." [Record reference omitted.] We construe Hwang's argument as challenging the legal sufficiency of the evidence to support the damage award.[12] Because, as we explain below, Capital One admitted the account's transaction detail during the trial showing the amount of the charge-off and each of the payments applied to the line-of-credit account, the record contains more than a scintilla of evidence to support the trial court's damage award on the account-stated claim.

---

[11]To recover on its account-stated claim, Capital One had to prove (1) transactions between it and Hwang that gave rise to the indebtedness; (2) an agreement, express or implied, between the parties that fixed the amount due; and (3) Hwang's express or implied promise to pay the indebtedness. *See Compton v. Citibank (S.D.), N.A.*, 364 S.W.3d 415, 417–18 (Tex. App.—Dallas 2012, no pet.) (citing *Dulong v. Citibank (S.D.), N.A.*, 261 S.W.3d 890, 893 (Tex. App.—Dallas 2008, no pet.)).

[12]Hwang also erroneously argues that Capital One abandoned its account-stated claim at trial, but it presented evidence in support of that claim and argued in closing that it had proved that claim.

## A. Standard of Review

A trial court's findings of fact have the same force and dignity as a jury's answers to jury questions. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). As with jury findings, a trial court's fact-findings on disputed issues are not conclusive, and when the appellate record contains a reporter's record, an appellant may challenge those findings for evidentiary sufficiency. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). We review the sufficiency of the evidence supporting challenged findings using the same standards that we apply to jury findings. *Id.*

Unchallenged fact-findings are entitled to the same weight as a jury's verdict and are binding on an appellate court unless either the contrary is established as a matter of law or no evidence supports the finding. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986); *Inimitable Grp., L.P. v. Westwood Grp. Dev. II, Ltd.*, 264 S.W.3d 892, 902 & n.4 (Tex. App.—Fort Worth 2008, no pet.). In other words, we defer to unchallenged fact-findings that are supported by some evidence. *Tenaska Energy, Inc. v. Ponderosa Pine Energy, LLC*, 437 S.W.3d 518, 523 (Tex. 2014).

We may review conclusions of law to determine their correctness based upon the facts, but we will not reverse because of an erroneous conclusion if the trial court rendered the proper judgment. *City of Austin v. Whittington*, 384 S.W.3d 766, 779 n.10 (Tex. 2012) (citing *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002)); *City of Forest Hill v. Benson*, 555 S.W.3d 284, 289 (Tex. App.—Fort Worth 2018, no pet.). That is, because a trial court's conclusions of law are not binding on us, we

9

will not reverse a trial court's judgment based on an incorrect conclusion of law when the controlling findings of fact support the judgment on a correct legal theory. *Super Ventures, Inc. v. Chaudhry*, 501 S.W.3d 121, 127 (Tex. App.—Fort Worth 2016, no pet.); *Wise Elec. Coop., Inc. v. Am. Hat Co.*, 476 S.W.3d 671, 679 (Tex. App.—Fort Worth 2015, no pet.).

We may sustain a legal-sufficiency challenge—that is, a no-evidence challenge—only when (1) the record bears no evidence of a vital fact, (2) the rules of law or of evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact. *Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018). In determining whether legally sufficient evidence supports the challenged finding, we must consider evidence favorable to the finding if a reasonable factfinder could, and we must disregard contrary evidence unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We indulge "every reasonable inference deducible from the evidence" in support of the challenged finding. *Gunn*, 554 S.W.3d at 658 (quoting *Bustamante v. Ponte*, 529 S.W.3d 447, 456 (Tex. 2017)).

Anything more than a scintilla of evidence is legally sufficient to support a finding. *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727–28 (Tex. 2003). More than a scintilla exists if the evidence rises to a level that would enable reasonable and fair-

10

minded people to differ in their conclusions. *Gunn*, 554 S.W.3d at 658. On the other hand, no more than a scintilla exists when the evidence offered to prove a vital fact is so weak that it creates no more than a mere surmise or suspicion of its existence. *McAllen Hosps., L.P. v. Lopez*, 576 S.W.3d 389, 397 (Tex. 2019); *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983).

### B. What the Record Shows

As mentioned above, at the conclusion of the trial, the trial court asked the parties to put together numbers for the damages calculation:

> It's going to take me a while to go through all of this, and I'll let you all certainly double-check me. But by my calculation, the total advances by Capital One were [$]51,747.28. . . . The way I'm going to come up with the judgment is I'm simply going to take that amount and subtract all of [Hwang's] payments, everything [Capital One] list[s] as a payment. I'm not going to include any fees or interests, and I'll tell you why. Because I'm not sure what they should be. Okay? *So I'll let y'all figure out that number and provide it to me, along with a form of judgment. . . .*
>
> . . . .
>
> [T]he way I calculate this is that there were advances of [$]51,747.28. If I'm incorrect, I'm willing . . . to hear that, but that's the way I . . . added it up by looking at the cash advances. And then what we'll do is we'll subtract all of the payments -- I don't care where those payments came from. I don't care if someone else made the payments. It makes no difference. All that matters is those payments were applied to this account. And then we'll take those two numbers and subtract them, and that will be the judgment against the defendant. [Emphasis added.]

Three weeks later, the trial court held a status hearing at which the parties presented the totals that they had calculated for the advances less the payments on the

11

line-of-credit account. Capital One's attorney stated that the total advances were $52,696.15[13] and that the total payments were $36,621.30. Capital One's attorney said that the amount of the total payments came from using the account's transaction detail and adding up all of the amounts that were coded as "7080," which represented regular payments.[14]

Hwang stated that the total advances were $49,363.91 and that the total payments were $58,531.34. Hwang said that he used the charge-off amount from the account's transaction detail as the total amount of advances. He explained that he had derived his total payments number by adding the amounts coded as payments; the amounts coded as fee assessments; and the amounts with "other codes that are unknown," which he stated that he used to his benefit.

The trial court concluded the hearing by stating that it was going to review both parties' numbers. The trial court ultimately awarded Capital One damages of $12,742.61. As pointed out by Capital One in its brief, the damage award is the difference between the $49,363.91 charge-off amount that Hwang used as his total advances less the $36,621.30 amount of total payments that Capital One calculated.

---

[13]The top left corner of the second page of the account's transaction detail also shows that $52,696.15 was the total advanced.

[14]It also appears that the code "8080" was used for regular payments and that Capital One included those amounts in its total payment amount.

## C.  Analysis

Here, Hwang contends that Capital One "completely ignored the suit on debt" at trial, that Capital One's "entire case was spent trying to prove up the breach of contract," and that Capital One "never presented evidence in the alternative regarding [its] suit on debt and the damage arising therefrom."  Hwang further states in his brief that

> [t]he substance of [the] testimony and evidence [that Capital One] entered as Exhibit 1 did not prosecute an account[-]stated claim, as corroborated in the [c]ourt's [f]inding[s] of [f]act:
>
> > 30.  [Capital One's] witness, Erika Pope, testified as to **the business records** and explained what was contained within them, including details about the applicable terms & conditions as to when the account was charged off.  Said witness also testified as to the balance left due and owing on the account as $51,463.27.
> >
> > 31.  [Capital One's] witness, Erika Pope, **testified as to the total interest charged** on the account, total payments made, and the total advances made when discussing the documents in [Capital One's] business records that had been entered into the [c]ourt's record as Exhibit 1.  [Emphasis added by Hwang.][15]

Contrary to Hwang's contention, findings of fact 30 and 31 reflect that Capital One did present evidence on its account-stated claim.  The business records included the line-of-credit account's transaction detail showing the amount that was charged off and each payment that was made, whether by an automatic withdrawal from

_____

[15]Hwang also specifically challenges finding of fact 21, but it does not appear to be relevant to this argument or his others.

Hwang, P.C.'s business account or through an offset from Hwang's personal account. Capital One's representative testified that $49,363.91 was the amount charged off on July 31, 2017, and she explained about the payments and offsets that had been made prior to the charge-off. Although Hwang asserts that had the trial court found for Capital One on the breach-of-contract claim, it would have awarded Capital One damages of $51,493.63,[16] the trial court was not bound to render damages solely on the breach-of-contract claim when it had evidence before it on the account-stated claim.

As the Houston First Court of Appeals has recently stated when reviewing a damage calculation,

> so long as there is a rational basis for the trial court's calculation, the trial court has broad discretion to award damages within the range of evidence presented at trial. *See Gulf States Utils. Co. v. Low*, 79 S.W.3d 561, 566 (Tex. 2002). Here, the trial court was entitled to consider all the evidence presented by the parties and accept the evidence it found was credible and reject the evidence it found was not credible. *See, e.g.*, *Nelson v. Najm*, 127 S.W.3d 170, 174 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (recognizing trial court's discretion in bench trial to accept or reject all or any part of witness's testimony).

*Control & Applications LLC Hous. v. Abdallah*, No. 01-20-00239-CV, 2022 WL 3650133, at *16 (Tex. App.—Houston [1st Dist.] Aug. 25, 2022, no pet.) (mem. op.).

The record demonstrates that the trial court considered all the evidence presented by the parties and accepted the evidence that it found credible and rejected

---

[16]The discrepancy in amounts is due to the interest, fees, and other charges that Capital One added to the arrears that the trial court ignored.

the evidence that it found was not credible, choosing to use one amount from Hwang's calculation[17] and one amount from Capital One's calculation.[18]  The trial court was within its discretion to choose to use the charge-off amount of $49,363.91 from the account's transaction detail (i.e., the same amount used by Hwang as his starting point) and to use the payment amount of $36,621.30 (i.e., the amount calculated by Capital One by adding up the amounts listed as payments on the account's transaction detail),[19] thus leaving a balance of $12,742.61.  Accordingly, the

---

[17]Capital One conceded that the charge-off amount was an appropriate amount to use for calculation of the total amount advanced.

[18]Hwang presented no controverting evidence supporting a different total-payment amount.

[19]The spreadsheet that Capital One filed with the trial court shows a list of the payments, which were allegedly taken from the account's transaction detail.  However, in comparing Capital One's spreadsheet to the account's transaction detail, there were several errors:

- The spreadsheet reflects a payment of $200.00 on 7/24/2008, but the account's transaction detail reflects that the $200 was an advance and should have been omitted from the payments (-$200.00);
- The spreadsheet reflects a payment of $359.38 on 8/4/2008, but the account's transaction detail shows the amount was $359.89 (+$0.51);
- The spreadsheet reflects a payment of $292.52 on 8/3/2009, but the account's transaction detail shows the amount was $292.53 (+$0.01);
- A payment of $1.64 on 7/18/2013 was omitted from the spreadsheet (+$1.64);
- There were two $1.00 payments on 6/2/2014, but the spreadsheet reflects only one (+$1.00); and
- A payment of $413.49 on 1/28/2015 was omitted from the spreadsheet (+$413.49).

trial court's damage award was within the range of evidence presented at trial. Because there is more than a scintilla of evidence to support the amount, we hold that the evidence is legally sufficient to support the damage award.

We therefore overrule Hwang's first issue.

## IV. Business Records

In his second issue, Hwang argues that the trial court "commit[ted] error when it allowed [Capital One's] business[-]records affidavit into the record when it was not maintained in the ordinary course of business." Specifically, Hwang argues that Capital One's business-records affidavit "is ad hoc and [was] created in anticipation of litigation." Although those two sentences from Hwang's brief refer to the affidavit, it appears that the bulk of his second issue raises arguments that go to the records that were attached to the affidavit.[20] Construing his issue as an attack on the documents,

---

The net amount of these corrections is $216.65, thus increasing the total payments from $36,621.30 to $36,837.95. Subtracting the corrected total payments of $36,837.95 from the charge-off amount of $49,363.91, the total damages come to $12,525.96. Accordingly, we modify the judgment to correct the calculation error by deleting the amount of damages that was written in the blank after "Damages:" and replacing it with $12,525.96. *See* Tex. R. App. P. 43.2(b); *Lopez v. Bailon*, No. 07-14-00442-CV, 2016 WL 4158034, at *3 (Tex. App.—Amarillo Aug. 4, 2016, no pet.) (mem. op.) (modifying the judgment to reflect a recovery of $71,410.34 instead of $71,460.34 because appellate court had the necessary information to do so).

[20]This is the only interpretation of Hwang's argument that makes sense because all business-records affidavits are created as a result of litigation and are not kept in the ordinary course of business. Moreover, Hwang did not make any objection in the trial court that the business-records affidavit failed to comply with the requirements of Texas Rule of Evidence 803(6).

16

rather than the affidavit, we conclude that the trial court did not abuse its discretion by admitting the documents under the business-records exception to the hearsay rule.

## A.     Standard of Review

We review a trial court's evidentiary rulings for abuse of discretion. *Owens–Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). A trial court abuses its discretion when it acts without regard for any guiding principles. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 754 (Tex. 1995). We must uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling. *State Bar of Tex. v. Evans*, 774 S.W.2d 656, 658 n.5 (Tex. 1989).

## B.     The Law on the Business-Records Exception

Properly authenticated records of regularly conducted business activity can be admitted into evidence as an exception to the hearsay rule. Tex. R. Evid. 803(6). We recently set forth the law on the admissibility of business records:

> Under Rule 902(10), business records are self-authenticating and require no extrinsic evidence of authenticity if they meet the requirements of Rule 803(6) and are accompanied by an affidavit that complies with subparagraph (B) of the rule and any other requirements of law. Tex. R. Evid. 902(10). Subparagraph (B) provides a template for a sufficient affidavit, which enumerates the elements of Rule 803(6), discussed above. Tex. R. Evid. 902(10)(B).
>
> . . . "Testimony by a witness or affiant identifying the exhibits as the business records of the proponent of the evidence 'is sufficient evidence to satisfy the authentication requirement of Rule 901(a), regardless of whether the witness had personal knowledge of the contents of this evidence.'" [*H2O Sols., Ltd. v. PM Realty Grp., LP*, 438 S.W.3d 606, 622 (Tex. App.—Houston [1st Dist.] 2014, pet. denied)] (quoting *Concept Gen. Contracting, Inc. v. Asbestos Maint. Servs., Inc.*, 346

S.W.3d 172, 181 (Tex. App.—Amarillo 2011, pet. denied)[] (brackets omitted)[)].

*Washington v. Yellowfin Loan Servicing Corp.*, No. 02-21-00215-CV, 2022 WL 16646409, at *3 (Tex. App.—Fort Worth Nov. 3, 2022, no pet.) (mem. op.) (citing *Savoy v. Nat'l Collegiate Student Loan Tr. 2005-3*, 557 S.W.3d 825, 834 (Tex. App.—Houston [1st Dist.] 2018, no pet.)).

## C.     What the Record Shows

During the trial, Capital One offered Plaintiff's Exhibit 1, a business-records affidavit with attached documents. Hwang objected on various grounds:

THE COURT: What are your objections?

MR. HWANG: Okay. Number one, there is a document called Capital One Bank [S]mall [B]usiness [U]nsecured [R]evolving [L]ine of [C]redit and [T]erm [L]oan [A]greement. I'm objecting to that document as irrelevant or excluded by the best[-]evidence rule.

THE COURT: Response?

[CAPITAL ONE'S COUNSEL]: Your Honor, it's the contract in -- it's a business record -- the contract that was in play at the time the account was charged off. He's getting ahead of himself as to the relevancy of the document. But is it a business record attached to a business[-]record affidavit? Yes. He's not attacking whether it's a business record.

THE COURT: That -- well, that's hearsay. So I -- I suppose your assert -- your assertion as to his objection as to relevance is that it's relevant because it is the underlying contract that is the part of this suit. Is that what I'm understanding you to say?

MR. HWANG: I'm sorry. Without the glasses, I'm not too -- are you asking --

THE COURT:  No, I'm asking --

MR. HWANG:  Sorry.

[CAPITAL ONE'S COUNSEL]:  I believe his argument is whether or not this is the --

THE COURT:  Well, I think --

[CAPITAL ONE'S COUNSEL]:  -- original contract, the best[-]evidence rule.

THE COURT:  His first objection was relevance.  So let's take up the relevance first.  So your response to his objection as to relevance was that it's the contract that is -- creates the underlying cause of action --

[CAPITAL ONE'S COUNSEL]:  It --

THE COURT:  -- is that correct?

[CAPITAL ONE'S COUNSEL]:  No, Your Honor.  My statement is it is the contract that was applicable when the breach occurred --

THE COURT:  Okay.

[CAPITAL ONE'S COUNSEL]:  -- and when the account was charged off.  It was the applicable contract at that time.

THE COURT:  That's fine.  And then as to best evidence?

[CAPITAL ONE'S COUNSEL]:  I'm not sure how it wouldn't be the best evidence, Your Honor, aside from -- I mean, it is the contract that was in play at the time.  I'm not sure how it would be any more best evidence[] since there's not a signature on there --

THE COURT:  Rebuttal?

[CAPITAL ONE'S COUNSEL]:  -- with his original signature.

19

MR. HWANG: Yeah. My only problem with it is when we have documents, the original ones being from 2007, this small business secured a line of credit, which they're purporting to be the agreement, has a copyright in 2011. It cannot be the agreement at all when it says on its face copyright 2011, and when the business loan was offered in 2007, four years later. And that's why it's also best[-]evidence rule. There should be something copyright 2007.

THE COURT: All right. I think that's probably more of a weight and credibility issue, and so I'll overrule your objection with regard to relevance and best evidence.

Any other objections as to that, what would be Exhibit 1?

MR. HWANG: Yeah. There is also a document in here that says [R]ules [G]overning [D]eposit [A]ccounts. Same objection. It says effective April 16, 2016. But again, the agreement that we had was from 2007. This one is now nine years too late.

THE COURT: Okay. And so your objection is?

MR. HWANG: Again, it is irrelevant and best[-]evidence rule.

THE COURT: Response?

[CAPITAL ONE'S COUNSEL]: Your Honor, it's the business[-]record affidavit. These are documents from the -- the entity, Capital One NA. I mean, the account statement showed -- or I'm sorry -- the payment register shows transactions well after the original account opened. It makes no sense to say, well, if it wasn't at the very beginning, it's all irrelevant. It's a business record. And anything that happened on the account business[-]record-wise, that's in this affidavit, and that's what we're trying to get in.

THE COURT: Okay. I'm going to overrule your objections as to relevance and best evidence as to that portion of the exhibit. Any other objections?

MR. HWANG: Again, there -- there's another document here that says Electronic Fund Transfer Agreement and Disclosure for Personal and Commercial Accounts. Effective November 14[,] 2015,

20

the original line of credit was issued in 2007. So again, irrelevant and also best[-]evidence rule. None of these documents go back to that -- that time period.

THE COURT: All right. Very good.

Response?

[CAPITAL ONE'S COUNSEL]: Same response, Your Honor. They're documents from my client that are business records that were kept in the ordinary course of their potential business[-]record affidavit --

THE COURT: And you're asserting they were the ones in play at the time of the default?

[CAPITAL ONE'S COUNSEL]: Correct, Your Honor.

THE COURT: Okay. Very good. Overruled. Any other objections?

MR. HWANG: Yes. Then there's another document, the Wire Funds Transfer Disclosure Statement, and this one is effective, it says, August 22[,] 2015. Same objection; relevancy and also best[-]evidence rule[] because the line of credit, again, was signed in 2007, not 2015. This is eight years later.

THE COURT: Response?

[CAPITAL ONE'S COUNSEL]: Same response, Your Honor. It's a business record, which is attached to a business[-]record affidavit, that were part of the account and in play at the time the account was charged off.

THE COURT: Overruled.

The trial court ultimately admitted Plaintiff's Exhibit 1.

21

**D.     Analysis**

On appeal, Hwang argues that "[m]issing documents indicate that the records [attached to] the affidavit were not used in the ordinary course of business but were created in anticipation of litigation."  He notes that Capital One did not include the line-of-credit account agreement from 2007 that was referenced by the Notice of Loan Approval; the account agreement for the Hwang, P.C. business account from 2007; and the account agreement that he signed when opening his personal account. Hwang, however, did not object on this ground at trial and therefore did not preserve this argument for appeal.  *See* Tex. R. App. P. 33.1(a).  Even assuming that he preserved such an argument, Hwang cites no authority for his implied proposition that a plaintiff who files an account-stated claim is required to attach all documents ever generated regarding the account or related accounts.  Moreover, nothing in Texas Rule of Evidence 803(6) or 902(10)(B) requires a party to produce every record related to an account.  Instead, Capital One had the burden to put on evidence to prove up its claims, and Capital One was free to choose which documents it wanted to admit into evidence with its business-records affidavit.  According to the business-records affidavit, Capital One chose forty pages of documents.  The trial court found that the forty pages of documents that Capital One submitted with its business-records affidavit, along with the testimony of Capital One's representative, were

22

sufficient to prove its claim.[21] The fact that Capital One may have had other documents in its file that it chose not to introduce did not hamper its ability to prove its case, nor did it render the documents attached to the affidavit something other than business records. We therefore overrule this portion of Hwang's second issue.

Hwang's second issue also attacks the dates on the documents that were attached to the business-records affidavit. He complains that the Small Business Unsecured Revolving Line of Credit and Term Loan Agreement has a copyright date of 2011,[22] instead of 2007 when the line-of-credit account was opened, and that the 2011 document was therefore made four years after the fact and in anticipation of litigation. As pointed out by Capital One, there is no evidence that the 2011 document was made in anticipation of litigation; the document appears to be a standard form used by the bank, and suit was not filed until 2018. Moreover, Hwang acknowledges that Capital One's representative explained at trial that it used the 2011 agreement instead of the 2007 agreement because the 2011 agreement superseded the 2007 agreement[23] and because the 2011 agreement contained the terms and

---

[21]As discussed in the analysis of Hwang's first issue, the trial court concluded in conclusion of law 6 that "Plaintiff [had] prove[n] all elements on its account[-]stated claim."

[22]For the sake of consistency, we refer to the document as the 2011 document, though we note that the end of the document states "rev. 4/14."

[23]The opening paragraph of the 2011 agreement states,

conditions that were applicable at the time the account was charged off. In spite of that explanation, Hwang argues that Capital One "made no effort to prove the contents of the 2007 agreement . . . and went straight to the text of the 2011 agreement to support its case." Hwang ignores that the definition of "supersede" is "[t]o annul, make void, or repeal by taking the place of." *Supersede*, Black's Law Dictionary (11th ed. 2019). Because the 2007 agreement was annulled, made void, or repealed by the 2011 agreement, it was therefore proper for Capital One to rely on the 2011 agreement in proving its claim.[24] We overrule this portion of Hwang's second issue.

---

This document is the agreement which governs the terms and conditions of the Small Business Unsecured Line of Credit or Term Loan from Lender to Borrower (the "Agreement"). *This Agreement supersedes any prior agreements that may have been furnished to Borrower pertaining to the term loan or unsecured line of credit to Borrower set forth in the Notice of Loan Approval and this Agreement.* By use of the Advance Checks or otherwise obtaining credit from Lender, or using the proceeds of any loan funded into Borrower's deposit account with Lender, Borrower confirms its agreement to be bound by the terms and conditions of this Agreement. [Emphasis added.]

[24]Additionally, Hwang did not enter the 2007 agreements into evidence or attempt to argue how their terms differed from the documents in Plaintiff's Exhibit 1; he claimed that he did not have them. And as noted in conclusions of law 16 and 17,

16. [Hwang] did not provide any evidence on the record as to any contract/terms and conditions that superseded those in Exhibit 1.

17. [Hwang] did not enter any items into evidence that contradicted Exhibit 1 that was entered by [Capital One].

24

Hwang also argues in his second issue that the documents related to his two demand accounts (a business account and a personal account) were needed to justify the offsets.[25] Hwang contends that the omission of these documents from the business-records affidavit creates a gap and "demonstrates that [Capital One's] files were not maintained in the course of regularly conducted business but were engineered in anticipation of litigation." Hwang cites no authority for this proposition. As discussed above, the rules of evidence do not require a plaintiff to include all documents related to an account but rather allow the plaintiff to choose which documents to admit with a business-records affidavit. Moreover, any question as to the gap in the dates on the documents that were included with the business-records affidavit goes to the weight that the trial court could give them, not to their admissibility. *See, e.g.*, *Washington*, 2022 WL 16646409, at *3 ("We therefore agree with the trial court's conclusion that [appellant's] attacks go to the weight that a factfinder can give to the [documents submitted as business records], not to their admissibility."). We overrule this portion of Hwang's second issue.

Hwang additionally argues in his second issue (without citing any authority) that the business-records affidavit is limited in scope solely to the small-business line-of-credit account, that the demand accounts are separate from the line-of-credit account, and that "any record or testimony concerning them are outside the purview

---

[25]To the extent that Hwang challenges the sufficiency of the evidence to reflect the offsets, that argument is part and parcel of his third issue and is addressed below.

25

of the business[-]records affidavit." Hwang appears to argue that Capital One was prohibited from attaching to the business-records affidavit the documents from Hwang, P.C.'s business account because the affidavit stated that "[a]ttached hereto as Exhibit A are 40 pages of documents [that] are true and correct copies of regular accounting records of Capital One National Association [that] pertain *to the account of Stephan D. Hwang* (hereinafter, the 'Records')." [Emphasis added.] He is correct that Hwang, individually, and Hwang, P.C. are separate entities and that it was only by virtue of the guaranty that Hwang, individually, was responsible for the Hwang, P.C. business account. But the argument that he raises relates to a formal defect in the affidavit—that the affidavit should have stated that the records pertained to the Hwang, P.C. business account. Hwang did not object on this ground in the trial court. *See Valent v. Firstmark Credit Union*, No. 04-19-00687-CV, 2020 WL 1159057, at *2 (Tex. App.—San Antonio Mar. 11, 2020, no pet.) (mem. op.) (holding that because appellant failed to object to the business-records affidavit's alleged formal defects prior to its admittance, appellant had waived the issue and could not complain of it on appeal). *See generally Seim v. Allstate Tex. Lloyds*, 551 S.W.3d 161, 166 (Tex. 2018) ("[W]hen an affidavit suffers from a mere defect in form, that flaw must be objected to and ruled upon by the trial court for error to be preserved."). Accordingly, we overrule this portion of Hwang's second issue.

In his next-to-last argument in his second issue, Hwang argues that "the way the documents are included is confus[ing]" because "[t]here is no governing

26

document relating back to the time when [the line-of-credit account] was opened." Hwang then goes on to raise arguments, as he did at trial, related to the dates of the Rules Governing Deposit Accounts, the Electronic Funds Transfer Agreement and Disclosure for Personal and Commercial Accounts, and the Wire Funds Transfer Disclosure Statement. He contends that "none of the documents can be said to have been created at or near the time of any specific event." Hwang's argument presumes that the only applicable documents are those that were created at or near the time that the line-of-credit account was opened in 2007. As discussed above, Hwang does not dispute the testimony from Capital One's representative that the documents in Exhibit 1 were the governing documents at the time the account was charged off, nor does he point to any authority to show why Capital One was not allowed to submit these documents with its business-records affidavit to prove its case. We overrule this portion of Hwang's second issue.

At the end of his second issue, Hwang argues that the documents attached to the business-records affidavit "were documents of convenience" because Capital One "could not demonstrate when these documents were sent to, delivered to, or received by the Appellant." Hwang's argument comes from his trial testimony in which he stated that "[the Capital One representative] did not testify at all further that the agreements from 2011 and 2016 were even sent to [him] or provided to [him]. The first time [that he] had seen those agreements w[as] when [they were] provided as Plaintiff's Exhibit 1 during trial." But at the outset of the trial when the business

records were offered into evidence, Capital One's counsel stated that the business-records notice had been on file with the trial court since September 2018.[26] Later, Capital One's counsel explained that Hwang had received the documents "in disclosures" dated June 21, 2018. The trial court "note[d] for the record that [the disclosures] do indeed include the same material as the business[-]record[s] affidavit and its accompanying exhibits." The record thus demonstrates that the documents were served on Hwang in disclosures more than three years before the trial commenced.[27] We overrule this portion of Hwang's second issue.

Having overruled each of the arguments in Hwang's second issue, we overrule his second issue in total.

## V. Limitations

In his third issue, Hwang argues that the trial court committed error by failing to dismiss this case under the statute of limitations when Hwang, P.C. defaulted on the line-of-credit account in 2009. Hwang contends that the suit was filed five years after the limitations period expired. Hwang bases his argument on the faulty premise

---

[26]Additionally, Plaintiff's Exhibit 1 contains a document entitled "Plaintiff's Notice of Delivery of Business[-]Records Affidavit" giving the court notice that Capital One had delivered to Hwang a copy of the business-records affidavit by certified mail on September 7, 2018.

[27]To the extent that Hwang is arguing that the language of the guaranty does not pertain to any document that was not "sent to" him at the time the documents were revised, this again goes to the weight, not the admissibility, of the documents that were attached to the business-records affidavit.

28

that the action accrued when he closed the business account on December 7, 2009.[28] As discussed below, the governing statute sets the accrual date for a suit on an open or stated account on the day that the dealings in which the parties were interested together cease, which was not the date on which Hwang closed the business account that was used to make payments on the line-of-credit because Hwang was still liable on the guaranty and had another account from which the bank could and did apply its right of setoff and withdraw payments, thus extending the dealings in which the parties were interested together.

## A. Applicable Law and Burden of Proof

Whether a cause of action is barred by limitations is a question of law that we review de novo. *Cheatham v. Pohl*, No. 01-20-00046-CV, 2022 WL 3720139, at *9 (Tex. App.—Houston [1st Dist.] Aug. 30, 2022, no pet. h.) (op. on reh'g) (first citing *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003), and then citing *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 202 (Tex. 2011) (op. on reh'g)). Statutes of limitations vary by claim as determined by the Texas Legislature. *See generally* Tex. Civ. Prac. & Rem. Code Ann. §§ 16.002–.051. Texas Civil Practice and Remedies Code Section 16.004(c) states that "[a] person must bring suit . . . on an open or stated account . . . not later than four years after the day that the cause of action accrues. For purposes of this subsection, the cause of action accrues on the

---

[28]We note that Hwang confuses the guaranty with the primary Hwang, P.C. obligation throughout his argument.

day that the dealings in which the parties were interested together cease." *Id.* § 16.004(c).

Hwang asserted limitations as a defense to Capital One's lawsuit, so he had the burden to prove the defense at trial. *See* Tex. R. Civ. P. 94; *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 517 (Tex. 1988). To reverse the trial court's judgment based on limitations, Hwang shoulders the burden on appeal to demonstrate that the evidence conclusively established his limitations defense as a matter of law. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001).

## B.    What the Record Shows

During the trial, Hwang agreed that the line-of-credit account was paid for through automatic drafts from the Hwang, P.C. business account at Capital One. Hwang does not dispute that he closed the business account in December 2009 and that Hwang, P.C. thus defaulted on the line-of-credit account. Based on the terms and conditions in the small-business line-of-credit application and in the line-of-credit agreement, Capital One then used its right of setoff and withdrew payments from Hwang's personal account to cover the payments due on the Hwang, P.C. line-of-credit account. The account's transaction detail, which was submitted with the business-records affidavit, showed that the last payment was posted to the account on March 8, 2017. The account's transaction detail also shows that the line-of-credit account was charged off on July 31, 2017, and Capital One's representative testified to this date as well. Hwang put on no evidence to dispute this date. Conclusion of

law 10 states, "[Capital One] timely filed this claim within the applicable statute of limitations."

## C. Analysis

Hwang wants the accrual date to be the 2009 date on which he closed the business account from which payments on the line-of-credit account were initially made. In an attempt to establish that the parties' dealings ceased in 2009, he claims that the offsets from his personal account from 2009 to 2017 were unlawful because the agreements did not disclose that Capital One had a right of setoff against all of Hwang's Capital One accounts.[29] He narrows his focus to a single phrase in the paragraph with the guarantor's signature box on the business-loan application:

**SIGNATURES OF GUARANTORS**

Each of the undersigned (a) jointly, severally, solidarily, and unconditionally guarantees the prompt payment in full of all obligations of the Business Applicant to Capital One, due or to become due, now existing or hereafter arising, (b) agrees to comply with and shall be jointly, severally, and solidarily bound by the terms and conditions of the Small Business Unsecured Line of Credit Agreement (if Business Applicant has applied for an unsecured term loan) *or the Capital One*

---

[29]To the extent that Hwang's third issue (or any other issue) can be broadly read to argue that he did not have notice of Capital One's right of setoff because he allegedly did not receive the 2011 and 2016 documents, such argument is refuted by the record. As set forth in the background section, Capital One's representative testified that Hwang called Capital One in 2010 claiming that he would deposit funds in his personal account as soon as he received payment from clients; thus, he implicitly acknowledged that he knew that Capital One was drafting payments from his personal account to pay the line-of-credit account. Additionally, Hwang testified that he had to make deposits into his personal account to prevent overdraft fees caused by the automatic withdrawals that Capital One was making from that account to pay the line-of-credit account.

*MasterCard BusinessCard Agreement (if Business Applicant has applied for a MasterCard BusinessCard) that will be sent to the Business Applicant if the credit is approved,* (c) grants to Capital One a security interest in and right of offset against any and all present and future funds of any of the undersigned on deposit with Capital One including certificates of deposit and other deposit accounts in the name of any of the undersigned as security for all obligations of Business Applicant to Capital One, due or to become due, now existing or hereafter arising and (d) certifies that all information contained in this Application or otherwise provided to Capital One is complete, true, and correct and authorizes Capital One to obtain credit reports to check the individual and business credit ratings of the undersigned.  If any guarantor is an entity, each person signing on behalf of such entity certifies that such person is signing in the capacity indicated below such person's signature and that such person is authorized to act in such capacity.  [Emphasis added.]

Hwang questioned Capital One's representative about the application's reference to the MasterCard BusinessCard.  She explained that the business-loan application covered other accounts and that Hwang, P.C.'s  line-of-credit account did not have a MasterCard.  Removing the italicized portion because it does not pertain to the line-of-credit account at issue here, the remainder of the text clearly states that Hwang, who signed as guarantor for his law firm's line-of-credit account, agreed to be bound by the Small Business Unsecured Line of Credit Agreement and that he granted Capital One a right of offset against any funds that he had on deposit with Capital One.

Additionally, Capital One's representative explained that the right of setoff was also set forth in Paragraph 9 of the Small Business Unsecured Revolving Line of Credit and Term Loan Agreement.  Paragraph 9, entitled "Joint, Several[,] and Solidary Liability; Security," states that

32

Borrower and each Guarantor shall be jointly, severally, and solidarily liable for the Loan and shall be jointly, severally, and solidarily liable for all other obligations of Borrower to Lender, due or to become due, now existing or hereafter arising. As collateral security for the Loan and all other obligations of Borrower to Lender, due or to become due, now existing or hereafter arising (with the exception of any indebtedness under a consumer credit card account), Borrower and each Guarantor[30] hereby grant Lender a continuing security interest in any and all present and future funds on deposit with Lender, or any of Lender's subsidiaries or affiliates, including certificates of deposit and other deposit accounts in which Borrower or any Guarantor is an account holder (with the exception of IRA, pension, and other tax-deferred deposits). *Borrower and each Guarantor further agree that, should there be a default under the Loan, Lender may at any time and without prior notice to either Borrower or any and all Guarantor(s) thereafter apply (set-off) any such funds on deposit with Lender, or any of Lender's subsidiaries or affiliates, including certificates of deposit and other deposit accounts in which Borrower or any Guarantor is an account holder*, against the Loan and any other obligations of Borrower to Lender, due or to become due, now existing or hereafter arising, without any liability to you. Lender's right of set-off any deposit account is in addition to any other rights and remedies that Lender may have under law or under any other contractual agreement. [Emphasis added.]

Similarly, the Rules Governing Deposit Accounts also provided Capital One with a right of setoff against any funds that Hwang maintained on deposit with Capital One. Because Capital One was allowed to pursue its right of setoff against Hwang's personal account from 2009 to 2017, the record demonstrates that the parties' dealings continued past 2009 when Hwang closed the business account.

Although Hwang, as the proponent of the affirmative defense of limitations, bore the burden to show when Capital One's cause of action accrued, the undisputed evidence at trial showed that the parties ceased doing business together no earlier than

---

[30]As set forth above, Hwang signed as the guarantor on the business-loan application.

July 31, 2017, when Capital One charged off the balance of the line-of-credit account. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.004(c); *Kaldis v. Crest Fin.*, 463 S.W.3d 588, 596 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (holding that the undisputed evidence at trial showed that the parties ceased doing business no earlier than January 2009, which was when the account statement indicated that appellant's account was closed by the bank; prior to that, appellant's account remained open and indicated expectations of further dealings between the parties); *cf. Marshall v. Crown Asset Mgmt., LLC*, No. 13-17-00115-CV, 2017 WL 6379830, at *3 (Tex. App.—Corpus Christi–Edinburg Dec. 14, 2017, no pet.) (mem. op.) (using the date of the last statement for the account stated as the accrual date when the date of last payment was not known). Capital One was therefore required to file suit within four years of that date or by July 31, 2021. Capital One filed suit on February 23, 2018, which was well within the statute of limitations.[31] Thus, we hold that the trial court did not err by concluding that Capital One's suit, which was filed less than four years after it charged off the line-of-credit account, was not barred by limitations. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.004(c); *Kaldis*, 463 S.W.3d at 597. Accordingly, we overrule Hwang's third issue.

---

[31]Alternatively, even if we use the date of the last payment that was posted to the account—March 8, 2017—Hwang would still not prevail on his limitations defense.

34

## VI. Conclusion

Having overruled Hwang's three issues but having modified the judgment to correct a calculation error and to reflect that the award should be $12,525.96, we affirm the trial court's judgment as modified.

/s/ Dabney Bassel

Dabney Bassel
Justice

Delivered:  January 12, 2023